489 So.2d 1232 (1986)
Hedwig ANDERSON, Appellant,
v.
Eugene ANDERSON, Appellee.
No. BH-25.
District Court of Appeal of Florida, First District.
June 12, 1986.
James D. Swearingen, of Harrell, Wiltshire, Stone & Swearingen, Pensacola, for appellant.
James A. Johnston, Pensacola, for appellee.
SHIVERS, Judge.
The former wife appeals the amended final judgment in this dissolution of marriage action, contending the trial court erred by failing to award an appropriate amount of permanent, periodic alimony to the wife and by failing to award the marital home or at least the exclusive use and possession of the home to the wife. We agree and reverse.
The parties were married in 1960 while the husband was serving a tour with the United States Air Force in Germany. At that time, the wife was a German national with a ninth grade education and no vocational skills. The husband was periodically transferred to various military bases around the world and the wife and two children followed. In 1976, the husband retired from the Air Force as a Master Sergeant. The final judgment of dissolution was entered March 15, 1985.
The wife currently resides in the marital home. The parties' two children, both of whom are of majority age, live with the wife and attend junior college. The marital home is worth approximately $120,000 of which the parties have $70,000 in equity.
The wife became an American citizen in 1984. During her husband's active duty, the wife did not work outside the home nor acquire any further education. In 1979, the wife acquired her first job as a luncheon cook in an elementary school for $6,422.86 annual net income ($7,678.20 gross). Wife's only other income was a job cleaning homes for $60 a month, however, her physician recently advised her to stop this work due to her high blood pressure.
The husband receives an annual Air Force net retirement income of $10,036. Additionally, husband is employed with the Naval Air Rework Facility in Pensacola and received an average net income of $13,234 *1233 ($23,270 gross) in 1984. Husband's gross annual income in 1984 was approximately $33,000 which included compensation for overtime not guaranteed in the future. Wife's annual gross income is $7,678.20 without the house cleaning jobs and $8,398.20 with that additional income.
The supplement to final judgment was entered May 15, 1985 awarding permanent periodic alimony of $350 a month to the wife, ordering the sale of the marital home with each party entitled to 1/2 of the net proceeds, and ordering the parties each to pay 1/2 of the mortgage payments ($218.92 each) on the home until it is sold. An amended final judgment grants the wife all privileges as a divorced wife to any U.S. government facility, which includes the right to free medical care for life.
In Priede v. Priede, 474 So.2d 296, 297 (Fla. 2d DCA 1985), evidence that the husband's salary was over three times as great as the wife's and that the wife's salary would not support her at a standard approaching that which existed during the marriage warranted permanent periodic alimony in a sum commensurate with the wife's needs and the husband's ability to pay. See Jennings v. Jennings, 464 So.2d 1359 (Fla. 3rd DCA 1985). Here the evidence indicates that the husband's net income is over three times as great as the wife's income, and that the wife's salary as a luncheon worker will not be sufficient to support her at a standard which approaches that which existed during the marriage.
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates. Walter v. Walter, 464 So.2d 538, 539 (Fla. 1985), quoting from Canakaris v. Canakaris, 382 So.2d 1197, 1201-02 (Fla. 1980).
Here the wife's earning capacity is hampered by her medical condition of high blood pressure and her limited education. It is unreasonable to believe she will ever earn much more than the $7,678.20 gross ($6,422.86 net) she earns now as a luncheon worker. Even subtracting the husband's overtime compensation of $100 per week or $5,200 a year, his annual gross income is at least three times the amount of the wife's.
As to age and health the wife is 49 and is being treated for high blood pressure. There is no evidence in the record of the husband's age or the status of his health. There is nothing in the record indicating the husband's level of education but it appears his Air Force skills have kept him extremely employable. The parties originally married in 1960, and were not divorced until 1985.
During the marriage the parties had a relatively high standard of living, both while the husband was in the Air Force and after his retirement. The wife never worked outside the home until 1979 and the marital home was a three bedroom, two bath home overlooking a canal with a pool. The parties have no estate of value except the marital home.
The husband's ability to pay is not hampered by responsibilities to other dependents. Canakaris requires the ability to pay be determined by net income, net worth, past earnings and capital assets. Id., at 1202. Here the husband's net income is over $23,000 a year. Over the past twenty years of marriage the husband was the primary income producer in the family. The husband's capital assets are $35,000, his half of the equity in the marital home. He has no net worth because his liabilities far exceed his capital assets.
Under these facts it is apparent the wife's needs are much greater than the husband's, and that the husband has the ability to pay substantial alimony. The trial court's award of $350 a month will only increase the wife's gross income from *1234 $7,678.20 to $11,880 gross, while the husband's gross income is $33,000. Accordingly, the wife's permanent periodic alimony should be increased to a sum commensurate with her needs and the husband's ability to pay, taking into consideration the standard of living enjoyed during the marriage. Priede, supra at 298. We find that the record would support an alimony award of $600. Of course, if either party's financial situation changes in the future, the husband can petition for a modification of alimony.
The wife also contends that the trial court erred in ordering the sale of the marital home. In Gallant v. Gallant, 468 So.2d 479, 481 (Fla. 2d DCA 1985), the court addressed similar facts and stated,
This is a difficult issue because without at least exclusive use of the home until her death or remarriage, it appears that the wife may have no place to live without depleting her only assets, to wit, one-half of the proceeds from the sale of the home. On the other hand, as the trial court noted, if the wife is awarded the home or even given exclusive possession of the home, apparently the husband would be left with little or no assets.
An award of exclusive possession of the marital home must be either directly connected to the obligation to pay support or be temporarily necessary to prevent reduction in the value of the subject property. Duncan v. Duncan, 379 So.2d 949, 952 (Fla. 1980). The critical question is whether the award is equitable and just given the nature of the case. Id. Here, an award of exclusive possession of the marital home will give the wife a place to live without depleting her assets and will help fulfill the husband's obligation of support. In an attempt to lessen the great disparity in the financial circumstances of the parties, to provide support and to encourage an award which will provide the wife the ability to maintain a standard of living more in keeping with what she was accustomed to in the marriage, we reverse and remand for an award of exclusive use and possession of the home until the wife's remarriage, death or the sale of the marital home. If the marital home is sold, the parties will each receive half of the net proceeds. The parties shall continue to each pay half of the mortgage payments and costs which consist of taxes and insurance. Upon the sale of the marital home the husband should receive credit for his half of the mortgage payments, taxes and insurance. Pastore v. Pastore, 480 So.2d 231, 233 (Fla. 1st DCA 1985).
REVERSED and REMANDED.
BOOTH, C.J., and WIGGINTON, J., concur.