520 So.2d 87 (1988)
Irving WALDMAN, Appellant,
v.
Myrna WALDMAN, Appellee.
Nos. 86-2044, 86-2329.
District Court of Appeal of Florida, Third District.
February 16, 1988.
Rehearing Denied March 11, 1988.
Earle & Patchen, P.A., Daniels & Hicks, P.A., and Sam Daniels, Miami, for appellant.
Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A., and Paul A. Louis, John L. Zavertnik, and Leonard H. Rubin, Miami, for appellee.
Before HUBBART, FERGUSON and JORGENSON, JJ.

*88 CORRECTED OPINION
JORGENSON, Judge.
Dr. Irving Waldman brings a consolidated appeal from a final judgment granting an upward modification of alimony and child support and awarding attorneys' fees and costs to Mrs. Waldman.
The twenty-two-year marriage of Dr. Irving Waldman and Myrna Waldman was dissolved in 1976. In the final judgment dissolving the marriage, Mrs. Waldman received, as partial lump sum alimony/equitable distribution, Dr. Waldman's entire one-half interest in their marital home. In addition, she received all the furniture, furnishings and fixtures in the home, as well as title to a late-model Pontiac automobile with an equity of about $3,500. Mrs. Waldman's total lump sum award exceeded $157,000.
Dr. Waldman removed from the home a chair, television, movie camera, personal desk set, medical books, and clothes. He was awarded the equity of $9,500 in his townhouse and all the beneficial interest in his pension and profit sharing plan which had a value of approximately $137,000 in 1976.[1]
At the time of dissolution, four of the six children were minors. Mrs. Waldman was awarded custody. She received $4,000 per month combined permanent periodic alimony and child support, reduced to $3,000 per month after six months, and further reduced to $2,000 per month when the last child reached majority. Dr. Waldman maintained a major medical and hospitalization policy covering each of the minor children. He maintained life insurance policies with a total death benefit amount of not less than $160,000, with stepwise reductions as each child reached majority. Mrs. Waldman was provided with major medical and hospitalization insurance policies. In the decade following dissolution, Dr. Waldman, without compulsion of court order, has expended some $225,000 to furnish higher education and other comforts to his adult children.[2]
During those same years between the final judgment of dissolution and these proceedings, Mrs. Waldman dissipated all the assets she had acquired under the 1976 judgment. In the company of one Charles Marler, a gentleman with whom she enjoyed an intimate relationship, Mrs. Waldman enjoyed an upscale standard of living.[3] She and Mr. Marler lived in the marital home for a period of time before Mrs. Waldman sold the home. She bought, redecorated, and sold two other homes in Miami and one in Colorado where she had moved to be with Mr. Marler. While in Colorado she squandered the remaining proceeds from the sale of the marital domicile. Mrs. Waldman then returned to Miami, seeking to modify the original final judgment of dissolution by way of additional alimony and child support.
Following a hearing, the trial court entered its final judgment granting Mrs. Waldman's petition for modification.[4] The *89 court denied Dr. Waldman's claim that Mrs. Waldman had entered into a common law marriage under Colorado law.[5] Dr. Waldman appeals that portion of the final judgment increasing Mrs. Waldman's permanent periodic alimony to $5,500 per month and increasing support for the remaining minor child to $1,500 per month.
We affirm the award of increased child support and reverse the award of increased alimony based upon the following analysis.

I. Alimony

Modification based upon a change of circumstances requires a showing that the change is sufficient, material, involuntary, and permanent in nature. Bish v. Bish, 404 So.2d 840 (Fla. 1st DCA 1981). The change in financial circumstances must be meaningful, Powell v. Powell, 386 So.2d 1214 (Fla. 3d DCA 1980), relating to the needs of the spouse receiving the alimony and the ability of the other spouse to pay. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
While a loss in the dollar's purchasing power is a relevant factor in considering a modification of alimony, Greene v. Greene, 372 So.2d 189 (Fla. 3d DCA 1979), there must be a showing that the national problem of inflation impacts specifically on the individual claiming inflation as the basis for modification. Inflation must have in fact created the need. In Powell, this court affirmed an order granting an upward modification of alimony. There, the order was amply supported by a record showing that inflation caused Mrs. Powell to seek employment outside the home in order to preserve her previous standard of living. In the instant case, there is a marked absence of the required showing of a real change in the circumstances of a party as opposed to an abstract and largely irrelevant change in the economy as a whole. Powell, 386 So.2d at 1215. See also Stoler v. Stoler, 376 So.2d 253 (Fla. 3d DCA 1979) (error in providing in final judgment for automatic increase in alimony based upon cost of living index), cert. denied, 389 So.2d 1115 (Fla. 1980). The trial court in its order merely recited the increase in the Consumer Price Index and concluded that Mrs. Waldman's standard of living had been reduced thereby. The trial court failed to make the requisite findings of fact demonstrating, as in Powell, in what specific ways Mrs. Waldman's standard of living had diminished due to inflation.
Further, the mechanism of the original final judgment bears on the issue of inflation. Since 1976 Mrs. Waldman has received level payments of $3,000 each month in undifferentiated alimony and child support. As the minor children attained their majorities and ended their dependence on their mother  in 1977, 1980, and 1982  she suffered no diminution in her support. As we observed in Bess v. Bess, 471 So.2d 1342 (Fla. 3d DCA), appeal dismissed, 476 So.2d 672 (Fla. 1985), rev. denied, 482 So.2d 347 (Fla. 1986), the selfsupporting status of children previously dependent on a party may offset the impact of inflation.
Permanent periodic alimony provides for the needs and necessities of life to a former spouse as they have been established by the marriage of the parties. A divorced spouse is entitled to live in a style reasonably commensurate with the standard established by the parties during the course of a long-term marriage. See O'Neal v. O'Neal, 410 So.2d 1369 (Fla. 5th DCA 1982) (former wife's standard of living should be reasonably comparable to that established by former husband during their thirty-two-year marriage). However, financial needs must be evaluated in light of that standard. There is ample evidence *90 in the record to indicate that the court based its modification on the standard of living enjoyed by Mrs. Waldman post-dissolution and not the standard established during her twenty-two-year marriage. In its final judgment, the trial court noted that Mrs. Waldman had not been able "to maintain any semblance of the standard of living realized by the children and herself for a long period subsequent to the divorce." Although it is well established that a spouse's use of support on an extravagant or unsavory life style will not justify a downward modification or termination of alimony, Phillippi v. Phillippi, 148 Fla. 393, 4 So.2d 465 (1941); De Poorter v. De Poorter, 509 So.2d 1141 (Fla. 1st DCA 1987); Tinsley v. Tinsley, 502 So.2d 997 (Fla. 2d DCA 1987); Withers v. Withers, 390 So.2d 453 (Fla. 2d DCA 1980), rev. denied, 399 So.2d 1147 (Fla. 1981); Horner v. Horner, 222 So.2d 791 (Fla. 2d DCA 1969), her profligacy will not be subsidized by an order granting an upward modification. We find that the trial court erred as a matter of law in applying an incorrect standard to evaluate Mrs. Waldman's financial needs.
The property received at the time of original dissolution should also be considered in making a changed circumstances determination. De Poorter. Under the terms of the original final judgment of dissolution, Mrs. Waldman took possession of her husband's entire interest in the marital home. The home represented the lion's share of her equitable distribution and was provided to her so that she would have a place to live without depleting her assets. Possession of the asset would have enabled her to maintain her accustomed standard of living. Anderson v. Anderson, 489 So.2d 1232 (Fla. 1st DCA 1986). Mrs. Waldman managed her equity according to her own desire. She cannot now seek a modification to support a style of living made possible only through a wholesale  and voluntary  dissipation of her assets. See Vanden Bosch v. Elkins, 419 So.2d 1127 (Fla. 3d DCA 1982). Mrs. Waldman's health and inability to work, moreover, were contemplated at the time of the original final judgment. The fact that she tried to "work" and lost her assets in the process of starting a business which ultimately failed does not constitute an unforeseeable, involuntary change in circumstances. Jaffee v. Jaffee, 394 So.2d 443 (Fla. 3d DCA 1981). It is clear from the record that her financial straits resulted from Mrs. Waldman's willful and voluntary increased spending.
A beneficial interest in his pension fund constituted virtually all of the equitable distribution made to Dr. Waldman in the original final judgment. In the proceedings below, the trial court observed that his pension fund, valued at the time of the modification proceeding at approximately $1,200,000, had grown by almost 1000% since the dissolution. The increase, along with Dr. Waldman's doubling of salary, was considered sufficient evidence of the doctor's increased ability to pay increased alimony. We find, however, that the trial court has incorrectly applied the rule of law set out in Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), concerning a spouse's entitlement to pension or retirement benefits.
The marital home and the pension plan were treated as marital assets at the time of dissolution, and their respective values became part of the trial court's calculus. The law is quite clear in Diffenderfer and its progeny that, were the trial court to consider the same asset in calculating both property distribution and support obligations, an injustice would result. Diffenderfer, 491 So.2d at 267. The trial court may consider pension benefits either as a marital asset for lump sum distribution or as a source of support payments. By the original trial court's use of the pension plan and the marital home as offsetting assets, Mrs. Waldman was able to leave the marriage with a sizeable lump sum award. The court might have dealt with the pension rights merely as a source of support obligations, but an unfairness would have resulted in that, if Dr. Waldman died, Mrs. Waldman's alimony would cease while if she died, Dr. Waldman would experience an increase in income. Cowan v. Cowan, 389 So.2d 1187 (Fla. 5th DCA *91 1980), rev. denied, 397 So.2d 777 (Fla. 1981). To avoid this potential unfairness, Mrs. Waldman received a lump sum as an offset to her husband's pension plan, along with generous support payments.
An award of permanent alimony does not create a vested interest in a spouse's pension plan. O'Neal, 410 So.2d at 1373. See also Pastore v. Pastore, 497 So.2d 635 (Fla. 1986) (wife received one-half net proceeds of marital home and property interest, not alimony interest, in one-half of pension benefits); Holcomb v. Holcomb, 505 So.2d 1385 (Fla. 1st DCA 1987) (because wife did not receive house as lump sum alimony she was entitled to share in husband's retirement plan); Reyher v. Reyher, 495 So.2d 797 (Fla. 2d DCA 1986) (premarital value of pension plan must be excluded from equitable distribution to avoid awarding wife a windfall); Howerton v. Howerton, 491 So.2d 614 (Fla. 5th DCA 1986) (equitable distribution of 50% of husband's pension to wife did not entitle her to share in pension benefits acquired after dissolution of marriage). The potential income from Dr. Waldman's pension plan will affect his ability to continue to support Mrs. Waldman after his retirement. Left intact, the plan can meet the needs of both parties. The amounts awarded to Mrs. Waldman for retroactive alimony and child support, $306,648 due the first year[6] and $84,000 per year thereafter, would require Dr. Waldman to break into the pension plan.[7] The trial court's modification is no more than an impermissible effort to achieve for Mrs. Waldman a second lump sum settlement. The effect of the modification is to attack the validity of the previous final judgment. The order of the trial court modifying alimony must, therefore, be reversed.[8]

II. Child Support

On the record before us, we cannot say that a $500 per month increase in child support constitutes an abuse of discretion. Dr. Waldman's $3,000 per month undifferentiated support payment has continued in effect for more than ten years. The payment will decrease to $2,000 per month when Curtis, the remaining minor, turns eighteen. As part of its order of modification, the court awarded an increase in child support to $1,500 per month. We note that Curtis was six years old at the time of dissolution. He is now over seventeen years of age, and his expenses have increased considerably as he has matured. See Bess v. Bess, 471 So.2d 1342 (Fla. 3d DCA) (error to disallow child support increase for fourteen-year-old where husband has financial ability to pay more and twelve years has elapsed since the marriage was dissolved), appeal dismissed, 476 So.2d 672 (Fla. 1985), rev. denied, 482 So.2d 347 (Fla. 1986); Brooks v. Brooks, 423 So.2d 995 (Fla. 3d DCA 1982) (error in denying increase in child support where husband's income increased, purchasing power of the dollar declined, and minor children matured in six-year-period following divorce); Siegel v. Zimmerman, 319 So.2d 187 (Fla. 3d DCA 1975) (abuse of discretion to deny child support increase where needs of children, including school expenses, increased and where husband's income had doubled). It appears that the needs of the minor child existed as of the date the petition for modification was filed. Therefore, the $500 per month additional child support should have been made fully retroactive to that date, January 5, 1983. Shufflebarger v. Shufflebarger, 460 So.2d 982 (Fla. 3d DCA 1984); Meltzer v. Meltzer, 356 So.2d 1263 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 460 (Fla. 1979), aff'd, 400 So.2d 1348 (Fla. 1981).

*92 III. Attorney's Fees

The parties stipulated below as to reasonable attorney's fees based on the results obtained for Mrs. Waldman. Because we reverse the upward modification of alimony, the attorney's fees must be recomputed.
For the foregoing reasons, we affirm the upward modification of child support, reverse the upward modification of alimony, and remand with directions to recompute attorney's fees in accordance with the parties' stipulation.
Affirmed in part, reversed in part, and remanded with directions.
NOTES
[1] Neither party appealed the 1976 judgment.
[2] At the time Mrs. Waldman filed her petition to modify the 1976 judgment, the children were ages 27, 26, 24, 21, 19, and 13.
[3] Mrs. Waldman purchased a new Cadillac, overspent on her credit cards and had to seek credit card counseling, expended over $90,000 in redecorating her various houses, paid for a junket to Costa Rica, and invested $26,000 in a clothing business with Mr. Marler. Mrs. Waldman mortgaged her Colorado home as security for the business loans. When the business failed, Mrs. Waldman lost the home.
[4] At the conclusion of the proceeding and without indicating what its judgment would be, the trial court requested counsel for both parties to submit written final argument and orders. Thereafter, and without a hearing, the trial court adopted verbatim the final judgment drafted by counsel for Mrs. Waldman. We condemn this practice. We admonish the bench and the bar that, particularly in domestic relations cases, findings of fact and conclusions based thereon are of critical importance. "When an interested party is permitted to draft a judicial order without response by or notice to the opposing side, the temptation to overreach and exaggerate is overwhelming." Colony Square Co. v. Prudential Ins. Co. of America, 819 F.2d 272 (11th Cir.1987). The trial court's order is replete with "argumentative overdetailed partisan matter." Roberts v. Ross, 344 F.2d 747 (3d Cir.1965). The better practice, indeed the preferred practice, is for the trial court to indicate on the record its findings and conclusions. "The reviewing court deserves the assurance that the trial court has come to grips with apparently irreconcilable conflicts in the evidence ... and has distilled therefrom true facts in the crucible of his conscience." Keystone Plastics, Inc. v. C & P Plastics, Inc., 506 F.2d 960 (5th Cir.1975). The parties to this action are no less deserving of such assurances.

Notwithstanding Dr. Waldman's compelling argument that the trial court exercised no discretion, we will assume, without deciding, that it did, and, therefore, we address this case on the merits.
[5] No appeal was taken from that portion of the order.
[6] The final judgment provides for $125,000 retroactive alimony and child support; $85,000 in attorney's fees and $12,648 in costs; and $84,000 in permanent periodic alimony and child support, for a total of $306,648.
[7] The tax consequences of prematurely breaking into a pension plan are well understood. Equity should strive to avoid needless penalties.
[8] Although, on the record before us, Mrs. Waldman failed to present substantial competent evidence to support her petition for a modification of alimony, that failure in no way precludes her from showing a specific change of circumstances in some future petition.