552 So.2d 221 (1989)
Mark Edward HAAS, Appellant/Cross-Appellee,
v.
Linda Jean Mullin HAAS, Appellee/Cross-Appellant.
No. 89-00293.
District Court of Appeal of Florida, Second District.
October 4, 1989.
Rehearing Denied November 15, 1989.
*222 Leslie Telford of Klaus and Telford, Sarasota, for appellant/cross-appellee.
Larry K. Coleman, Bradenton, for appellee/cross-appellant.
ALTENBERND, Judge.
Both the husband and the wife appeal from a final judgment of dissolution of marriage. The wife maintains that the trial court abused its discretion in its determination of equitable distribution, and both parties maintain that the trial court abused its discretion in its decisions on other financial issues. Because the trial court's discretionary decisions are completely dependent upon its underlying determinations concerning two disputed financial issues and because the trial court expressly declined to make the critical findings of fact on those issues despite requests by the parties, we cannot adequately review the judgment. Accordingly, we find it necessary to reverse the judgment and remand to the trial court for a new trial.
This couple was married in 1975. They had two minor children at the time of the final hearing. During the first years of the marriage, the wife attended college and became a registered nurse. At the time of the divorce, she was employed in the nursing field and earned approximately $28,000 annually.
The husband has a background in electronics. At the beginning of the marriage, he was a general manager for a business which installed security and sound systems. In 1981, he began his own business, Haas Alarm & Sound, Inc. Through 1983, Mr. Haas did not draw a salary from his corporation and any profits from the business were reinvested in the business. In 1984, he received a salary of $26,000 from his corporation, and the sub-S corporation also earned an additional $11,000. By 1986, Mr. Haas's salary was $31,500, and the business earned nearly $38,000 in additional profit. The testimony indicates that Mr. Haas was successful in this business because he worked long hours and essentially performed the tasks one would typically expect of two or more employees.
By the time of the divorce, the husband contends that he was exhausted and that he decided to go to work for another company without selling his own corporation. The wife contends that the husband temporarily abandoned his own business to gain some economic advantage within the divorce proceeding. One way or the other, the husband accepted a new full-time job with another company a few months after the divorce proceeding was filed. At the new company, he worked installing security systems and earned $25,000 annually.[1]
At final hearing, the parties were in complete disagreement concerning the value of the husband's moribund business. There was testimony that the business had a value as high as $192,000 or as low as approximately $40,000. The trial court did not *223 select any date as the appropriate date to evaluate the business. See Perlmutter v. Perlmutter, 523 So.2d 594 (Fla. 4th DCA 1987), review denied, 531 So.2d 1354 (Fla. 1988). The final judgment correctly declared that the business was a marital asset. It awarded the entire business to the husband. The final judgment, however, placed no value upon this asset. On rehearing, both parties requested that the trial court specify a valuation of the business so they could determine the propriety of the trial court's financial decisions. The trial court expressly declined to place a value on the business, but suggested that, if forced to value the business, it would regard the business's value as "almost nil."
In the final judgment, the trial court gave primary residential responsibility for the couple's two minor children to the wife. The husband was ordered to pay child support in the total amount of $1,000 per month. Although there was evidence that the wife already had group health insurance on the minor children, the trial court also ordered the husband to provide health insurance for the children at an unknown cost. The husband was required to pay a $10,000 portion of the wife's attorney's fees. Except for the business, the parties had limited assets. The wife received the home with its equity of approximately $30,000 and its accompanying mortgage. The remaining marital assets were divided equally between the parties. The trial court did not award alimony to either party.
The husband and wife raise four issues on appeal. First, the wife assumes that the husband's business had substantial value and thereby concludes that she was shortchanged in the equitable distribution. If the business actually had a substantial value, the wife may be correct that the trial court abused its discretion in awarding that entire asset to the husband without awarding her corresponding lump sum alimony. Second, the husband argues that his child support obligation substantially exceeds the amount which would be fair under his actual income. He argues that the trial court abused its discretion in awarding child support which apparently was based upon an unknown quantity of imputed income. Third, the husband argues that the trial court should not have required him to pay $10,000 of the wife's attorney's fees because their actual earnings and assets are approximately equal and his business has nominal value.[2] The wife also challenges the trial court's award of attorney's fees, arguing that the amount she sought should not have been reduced. Finally, the husband argues that he should not be required to maintain potentially expensive and duplicative health insurance for the children.
This case exemplifies a reoccurring dilemma which pits the trial court's burgeoning case load against both the parties' right to understand the trial court's ruling, and this court's responsibility to provide a meaningful review of the trial decision. Under Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), the trial court has broad discretion in deciding these financial questions. Although this court has declined to require trial courts to make specific findings of fact in respect to every equitable distribution case, we have held that a trial court must make specific findings of fact in "certain situations." Clemson v. Clemson, 546 So.2d 75 (Fla. 2d DCA 1989); Miceli v. Miceli, 533 So.2d 1171 (Fla. 2d DCA 1988); but see Barrs v. Barrs, 505 So.2d 602 (Fla. 1st DCA 1987) (specific findings of fact required in all cases determining equitable distribution or special equities); Strickler v. Strickler, 548 So.2d 740 (Fla. 1st DCA 1989) [14 F.L.W. 1997] (judgment reversed due to absence of findings even though issue not raised on appeal). When findings are expressly requested by the parties and are necessary to permit appellate review of a complex, disputed divorce, the trial court should enter express findings either in the judgment or on the record.
We recognize that the preparation of findings of fact can be time-consuming for trial courts. This is particularly true when trial counsel become too entranced in their role as advocates and do not assist the trial *224 court by providing objective proposed findings of fact. See Waldman v. Waldman, 520 So.2d 87, 88 n. 4 (Fla. 3d DCA), review denied, 531 So.2d 169 (Fla. 1988). We know that the overwhelming majority of cases are carefully considered and thoughtfully resolved by the trial bench. The parties, however, lack our experience and occasionally need specific findings of fact to understand the justice of the trial court's decision. Especially in complex cases with extremely divergent testimony, findings of fact are needed by this court to determine that the trial court has in fact acted within its discretion and not in an arbitrary, inconsistent fashion. We suspect that such findings would facilitate the trial court in making an overall decision which fairly allocates resources to the several economic needs presented in any complex divorce. Likewise, we suspect that such findings would increase the parties' satisfaction with the trial court and decrease the number of costly appeals which are sometimes taken more from frustration than from merit.
Concerning the issue of equitable distribution, neither the parties nor this appellate court can assess the trial court's exercise of discretion because we do not know the critical findings of fact which were the foundation for the trial court's decision. In light of the parties' requests for findings, we will not speculate about any undisclosed findings which might support the judgment. As a practical matter, the decision on equitable distribution seems to suggest that the business has little value, while the decision on child support and attorney's fees suggests that the business has a substantially greater value.
Concerning the award of child support, the statutory child support guidelines are not applicable because the parties' combined net income, without imputed income, exceeds $50,000 per year. § 61.30(1), Fla. Stat. (1987). If the guidelines were applicable, the trial court would have been required to make specific findings concerning the husband's underemployment, his employment potential, and his probable earnings level. § 61.30(2)(b), Fla. Stat. (1987). While the statute does not mandate such specific findings for cases involving higher earnings, the need for such findings is equally great in all cases of imputed income without regard to the parties' income level.
It is well established that a court does have the authority to impute income to a party upon a showing that the party has the ability to earn more by the use of his or her best efforts to gain employment equal to his or her capabilities. Desilets v. Desilets, 377 So.2d 761 (Fla. 2d DCA 1979). In this case, we are concerned that the trial court may have imputed income based upon a party's prior extraordinary efforts rather than upon the best efforts which reasonably should be expected over an extended time period. See Sokol v. Sokol, 441 So.2d 682 (Fla. 2d DCA 1983); Wolfman v. Wolfman, 344 So.2d 893 (Fla. 4th DCA 1977.) It is also possible that the trial court awarded child support based upon the value of the husband's business, rather than upon his reasonable employment potential. We do not rule out the possibility that marital assets can be used for child support rather than equitable distribution, but such a decision without findings of fact or explanations in the record cannot be reviewed by the appellate court nor clearly understood by the parties. See generally Waldman v. Waldman, 520 So.2d 87 (Fla. 3d DCA), review denied, 531 So.2d 169 (Fla. 1988) (injustice would result if the same asset were considered for both property distribution and child support obligations). On remand, it may be entirely appropriate for the trial court to impute income to the husband. See Metz v. Metz, 546 So.2d 41 (Fla. 4th DCA 1989). We are simply ruling that the findings to support such a decision are absent from this record.
Although the law does not always require specific findings concerning the trial court's distribution of the family assets and financial obligations, it is perhaps ironic that specific findings are always required concerning the attorneys' award of fees. Fla. Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985); Woodruff & Sons, Inc. v. Pary, Inc., 543 So.2d 467 (Fla. 2d DCA 1989); Maas v. Maas, 541 So.2d 160 (Fla. 2d DCA 1989). In this case, those findings were not made. On remand, *225 the trial court should determine whether it is financially appropriate to require the husband to pay all or part of the wife's attorney's fees, both at trial and on appeal. Thornton v. Thornton, 433 So.2d 682 (Fla. 5th DCA), review denied, 443 So.2d 980 (Fla. 1983). If so, the trial court should also determine the appropriate amount after stating the findings required by Rowe.
Finally, concerning health insurance for the minor children, it may be reasonable for the trial court to place that obligation upon the husband. Prior to ordering the husband to assume this responsibility, however, the trial court must determine that the insurance is "reasonably available." § 61.13(1)(b), Fla. Stat. (1987). On this record, it is unclear whether the husband has access to group insurance "at a reasonable rate" or whether the insurance is otherwise reasonably available. Since it appears that this insurance may merely duplicate existing insurance purchased by the wife, it may be appropriate for the trial court to require the husband to reimburse the wife for the premiums paid on her group insurance policy.
Reversed and remanded for proceedings consistent herewith.
HALL, A.C.J., and PARKER, J., concur.
NOTES
[1] Subsequent to the entry of the final judgment, the husband lost his job with the new company and has since found employment at less than $5 an hour. This information was brought to our attention by a motion to review an order of contempt concerning Mr. Haas's failure to pay certain financial obligations under the final judgment. Since this decision reverses the final judgment upon which the order of contempt is based, that order must also be vacated by the trial court upon remand.
[2] See Smith v. Smith, 495 So.2d 229 (Fla. 2d DCA 1986).