602 So.2d 682 (1992)
Nancy P. BRAMAN, Appellant,
v.
James F. BRAMAN, Appellee.
No. 91-02547.
District Court of Appeal of Florida, Second District.
July 17, 1992.
Gerald W. Medeiros, Lakeland, for appellant.
Glen E. Greenfelder of Greenfelder, Mander, Hanson, Murphy & Dwyer, Dade City, for appellee.
FRANK, Judge.
The record in this matter leaves no uncertainty that the marriage of James and Nancy Braman was turbulent. Nancy gave birth to two children during the marriage  James, Jr., born June 9, 1986, whose custody and support are at issue, and Aaron Conrad, born March 15, 1990, whose natural father is David Conrad, the person with whom Nancy currently cohabits.[1] In addition to James, Jr. and Aaron, Nancy's behavior spawned a dissolution proceeding in which she was found by the trial court to be "morally unfit" to share parental responsibility for James, Jr. She now challenges three aspects of the final judgment: the decision to award "sole care, custody and control" of the child to James F. Braman, the amount of child support she is required to pay and the retroactivity of child support. The custody of Aaron is not disputed and it was agreed that Nancy would retain custody of him.
Nancy's attack upon that portion of the judgment awarding the custody of James, Jr., solely to James is based upon the principle, expressed in section 61.13(2)(b)1, Florida Statutes, that shared parental responsibility is the desired objective unless it would be detrimental to the child. If, however, a trial court finds that shared parental responsibility would result in detriment to the child, the court, in furtherance *683 of the child's best interests, may confer sole responsibility for the child upon one parent. § 61.13(2)(b)2 b, Fla. Stat. (1989). To aid in this determination, the legislature has fashioned ten factors relevant to the interests and welfare of the child. § 61.13(3)(a)-(j), Fla. Stat. (1989). Our review of the final judgment in the instant matter convinces us that the trial court focused upon one factor in particular  the "moral fitness of the parents"  in determining the custody of James, Jr. At first blush the element of moral fitness may appear sufficient to warrant the result reached by the trial court, given recurring episodes of Nancy's extramarital activity while the child was present in the home and her attempts to interfere with James, Jr.'s relationship with James. We are intensely mindful of the child's well-being and the evidence casting doubt upon Nancy's way of life. The trial court erred, however, in not supporting its decision with more extensive findings, either orally or in the final judgment, to bolster the conclusion that "shared parental responsibility would be detrimental to" James, Jr. § 61.13(2)(b)2, Fla. Stat. (1989); see Hunter v. Hunter, 540 So.2d 235 (Fla.3rd DCA 1989); Hicks v. Hicks, 511 So.2d 628 (Fla.2d DCA 1987). Accordingly, we reverse the award of sole parental responsibility to James, and remand with directions that the trial court enter appropriate findings disclosing its evaluation of the criteria set forth in section 61.13(3), Florida Statutes (1989).
Turning now to Nancy's child support obligation, we observe that the trial court imputed to her an earning capacity at the rate of the "minimum wage for a forty hour week," and ordered her to pay $44 per week in child support retroactive to the date of the filing of the divorce petition on July 11, 1989. The imputation of a "minimum wage" was improper. To reach the parties' combined available monthly income, the trial court is empowered, pursuant to section 61.30(2)(b), Florida Statutes (1989), to attribute an amount of income to an unemployed or underemployed parent upon a finding that such status is voluntary. If voluntary, the court must then ascertain the parent's potential for employment and probable earning level in the community. § 61.30(2)(b), Fla. Stat. (1989). Although the record suggests that Nancy is voluntarily unemployed but capable of earning a minimum wage, the trial court did not disclose how it reached the ultimate computation of Nancy's child support obligation. Thus, we reverse the child support burden imposed upon Nancy and remand for further proceedings in which the appropriate amount of such support, if based upon imputed income, conforms to the statutory elements. § 61.30(2)(b), Fla. Stat. (1989); see Neal v. Meek, 591 So.2d 1044 (Fla. 1st DCA 1991); Haas v. Haas, 552 So.2d 221 (Fla.2d DCA 1989).
Finally, Nancy questions the child support award's retroactivity. It appears that the concept of retroactive child support has not received extensive treatment by our courts. See Wright v. Wright, 411 So.2d 1334 (Fla. 4th DCA 1982). In any event, we are concerned as to whether the trial court gave adequate consideration to the correlative financial needs and abilities of James and Nancy. Nancy is currently raising Aaron, age 3, albeit with the help of the biological father. James neither requested nor demonstrated a need for retroactive support. Without demonstrating such need to the trial court, he has not shown that his is "an appropriate case" calling for such relief. Wright, 411 So.2d at 1336. We reverse the retroactive award of child support.
Accordingly, the portions of the final judgment determining James, Jr.'s custody and the weekly amount of support required of Nancy are reversed and those matters are remanded for further proceedings consistent with this opinion.
CAMPBELL, Acting C.J., and PARKER, J., concur.
NOTES
[1] Indeed, Nancy testimonially admitted to acts of adultery, and claims that David West, her first cousin, with whom she had sexual relations shortly after her marriage to James, is James, Jr.'s biological father. There is no issue before us, however, associated with the paternity of James, Jr.