671 So.2d 282 (1996)
Doris M. EMMEL, Appellant,
v.
David T. EMMEL, Appellee.
No. 95-196.
District Court of Appeal of Florida, Fifth District.
April 12, 1996.
*283 Randall J. Silverberg, Jacksonville, for Appellant.
Geoffrey B. Dobson of Dobson & Brown, P.A., St. Augustine, for Appellee.
PETERSON, Chief Judge.
Doris M. Emmel appeals the denial of her counter-petition for an increase in alimony and the denial of her request for attorney's fees. David T. Emmel cross-appeals the trial court's denial of his petition for a downward modification of alimony. We affirm the trial court on all matters except the issue of attorney's fees.
The parties were married in 1952 and divorced in 1984. Under the final judgment of dissolution, the former wife was awarded alimony of $900 per month and an additional $75 per month for her health insurance costs if the former husband failed or was unable to provide coverage for her from his business' policy.
The couple moved to Florida in the seventies and the former husband began a wholesale tool supply business with the parties' son. The final judgment of dissolution indicated that:

*284 the son has been the principal actor in this operation, and a living has been sustained by him. The husband (litigant here) has used the business as a tax shelter to assist in the accumulation of retirement income and has not drawn much salary except for investment and/or loans back to the corporation.
The final judgment contained a finding that no portion of the business was subject to equitable distribution "due to the uncertain condition of the ... business." Three days after the trial court entered this final judgment, the parties entered into an agreement in which the former wife received the benefit of certain monetary consideration and the former husband received the benefit of a promise that no appeal would be made of the final judgment.
On March 7, 1994, the former husband filed a petition for modification of alimony in which he sought a reduction in the alimony obligation based on his tool supply business having taken a downturn and the former wife being in receipt of social security benefits. The former wife counter-petitioned for an increase in alimony based on an increase in her cost of living and the former husband's own receipt of social security benefits. The trial court entered a final order denying both parties' modification requests and denying each of the parties' requests for attorney's fees. The final order stated that the agreement which the parties entered into was a "pure" marital settlement agreement and that, even if it were not, neither party had carried the burden of proving a substantial change in circumstances to justify a modification. On rehearing, the trial court declared that the parties' agreement was not a "pure" property settlement agreement and was therefore modifiable, but that, as the court had stated earlier, neither party had met their burden to substantiate a modification. The order on rehearing also noted that the former wife had sought rehearing of the denial of attorney's fees to her. On this issue the trial court stated, "Although the former husband has greater total assets than the former wife, he does not have sufficient liquid assets with which to pay the former wife's attorney's fees."
A "pure" marital property settlement agreement is one in which "the parties each relinquish valuable property rights in return for receiving other rights, including the right to receive periodic payments" and "is generally held to be non-modifiable where the parties by their division of the property evince the intent that the settlement be a final division of their property." Draper v. Draper, 604 So.2d 946, 947 (Fla. 2d DCA 1992). Although the agreement in the instant case indicates that the former wife both received and surrendered valuable property rights the agreement failed to clearly evince an intent that the alimony awarded to the wife could not be modified subsequent to the entry of the final judgment upon the requisite showing of a substantial change of circumstances. In Vargas v. Vargas, 654 So.2d 963 (Fla. 5th DCA 1995), this court recently noted that, "there is no doubt that Florida recognizes the right of the parties to contract away the right to seek modification of even alimony awards." Id. at 964. In Vargas, the parties signed an agreement with a release containing the following language:
The parties mutually accept the provisions herein in full satisfaction of all property and all obligations whatsoever arising out of the marital relationship of the parties.... Each party ... does hereby release the other ... from all causes of actions, claims, rights or demands whatsoever, which either ever had or now has against the other, and specifically relinquishes any right, title and interest in or to any past, present or future holdings, accumulation, money or property of the other party.
Id. This court held that the above language failed to constitute a waiver of "causes of action for modification of support ... which might arise in the future." Id. at 965. Given the above language used in Vargas did not constitute a waiver of the right to seek modification of alimony, the simple agreement in the instant case to not appeal the final judgment likewise did not, as the trial court ultimately concluded, preclude either party from attempting to modify alimony in the future.
*285 On the issue of modification, the former wife presented evidence below that the cost of living, according to the United States Consumer Price Index, had increased since the amount of her alimony was established. The former husband, in arguing both that the former wife is not entitled to an increase, and that he is in fact, entitled to a decrease, relies solely on what he describes as a decline in his tool supply business.
The former husband's argument that he is entitled to a reduction in his alimony obligation is without foundation. The final judgment of dissolution of marriage specifically stated that the former husband had "used [the tool supply business] as a tax shelter to assist in the accumulation of retirement income and has not drawn much salary except for reinvestment and/or loans back to the corporation." The former husband presented testimony at the modification proceeding that the income of his tool business was not "as good" as it was a few years ago. But, that income, according to the original final judgment, was never expected to be relied upon for the payment of the wife's $975 of monthly alimony.
The former husband failed to show any substantial change of circumstances justifying a decrease in the alimony payment. The former wife, in contrast, showed that, according to the Consumer Price Index, the cost of living has increased some 42 percent between 1984, the year of the dissolution, and 1994, the year of the modification request. She also testified generally as to the cost of items being more expensive than they were in 1984.
In Waldman v. Waldman, 520 So.2d 87 (Fla. 3d DCA), rev. denied, 531 So.2d 169 (Fla.1988), a case upon which the former wife relies, the court held that merely reciting an increase in the Consumer Price Index is not sufficient proof that inflation has caused a reduction in one's standard of living and that "[t]here must be a showing that the national problem of inflation impacts specifically on the individual claiming inflation as the basis for modification. Inflation must have in fact created a need." Waldman at 89. We interpret Waldman to require that the recipient spouse must show that his or her condition has actually been "diminished," not merely impacted by, inflation. On this note, we observe that when the $390 the former wife receives monthly in social security payment is added to her $975 alimony payment, the social security payment almost entirely makes up for her 42% loss in general purchasing power. Also relevant in assessing the former wife's current financial condition is the fact that her net worth has increased from $127,000 at the time of the dissolution of marriage to $187,000 as of May 23, 1994. Although the former wife should not be penalized for her prudence and savings, she has nonetheless not demonstrated a change of circumstances which would justify, at the present time, an increase in her alimony. The trial court therefore properly denied both the former husband's petition and the former wife's counter-petition.
The trial court's order denying the wife's motion for attorney's fees declared:
Although the former husband has greater total assets than the former wife, he does not have sufficient liquid assets with which to pay the former wife's attorney's fees.
No support is cited for the trial court's notion that a party should be excused from paying a former spouse's attorney's fees when assets are not readily convertible to cash. Such a proposition would undoubtedly lead to abusive pre-litigation strategy. In Gallow v. Gallow, 497 So.2d 1288 (Fla. 3d DCA 1986), the trial court refused to require the former husband to pay the former wife's attorney's fees because of his "present inability to do such." In reversing the denial of these fees, the appellate court noted the trial court could have retained jurisdiction "to enforce said award against future earnings of the [former husband]." In the instant case, while the future earnings of the former husband are uncertain due to the former husband's advanced age, the husband's financial affidavit leaves no question that he has the ability to obtain liquid assets in the near future. On remand, the trial court may reconsider an award of attorney's fees to the wife, consider the value of the husband's liquid and non-liquid assets as being available to pay attorney's fees, consider the assets available to *286 the wife to pay her own fees and consider the purpose of section 61.16, namely, "to place the spouses in a dissolution proceeding on as nearly an equal footing as is possible in regard to their financial ability to pay for adequate legal representation and costs." Azzarelli v. Pupello, 555 So.2d 1276, 1277 (Fla. 2d DCA 1989). See also Canakaris v. Canakaris, 382 So.2d 1197, 1205 (Fla.1980) ("the purpose of section 61.16, Florida Statutes, was to ensure that both parties will have similar ability to secure competent legal counsel.").
The portions of the final judgment denying both parties' petitions to modify alimony are affirmed but the denial of an award of attorney's fees to the former wife is vacated and remanded for reconsideration.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
GRIFFIN, J., concurs and concurs specially, with opinion.
COBB, J., concurs in part; dissents in part, with opinion.
GRIFFIN, Judge, concurring specially.
I concur with Judge Peterson's view of the attorney's fee issue and add that the "substantial non meritorious"[1] nature of a party's petition for modification which makes it necessary for the other party to incur fees is a factor that can be considered in gauging the issue of disparate financial status and ability to pay. Powell v. Powell, 665 So.2d 1146, 1147 (Fla. 3d DCA 1996); Mettler v. Mettler, 569 So.2d 496, 498 (Fla. 4th DCA 1990).
COBB, Judge, concurring in part, dissenting in part.
I concur with the majority opinion's affirmance of the trial court's denial of the petitions for modification of the amount of alimony. I disagree in respect to the matter of attorney fees. In this case the trial judge denied an attorney's fee award based on the illiquidity of the husband's assets which made such payment unfeasible. This was an erroneous basis for a correct ruling.[1]
The test for the award of attorney fees under section 61.16, Florida Statutes, was succinctly set out by Justice Barkett in Nichols v. Nichols, 519 So.2d 620, 621 (Fla.1988):
[T]he equitable considerations underlying our dissolution law, see section 61.011, Fla. Stat. (1985), compel the trial court to mitigate the harm an impecunious spouse would suffer where the other spouse's financial advantage accords him or her an unfair ability to obtain legal assistance.... Where one spouse effectively is unable to pay for legal counsel and the other suffers no similar disability, the very purposes of Florida's dissolution statute are jeopardized and the trial court risks inequity.
This standard was reaffirmed by the Florida Supreme Court in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828, 835 (Fla.1990), wherein the court stated:
Our case law implementing this statute [§ 61.16, Fla.Stat.] requires a judgment to consider the needs of the party seeking a fee and the financial resources of the parties to assure that both parties receive adequate representation. A significant purpose of this fee-authorizing statute is to assure that one party is not limited in the type of representation he or she would receive because that party's financial position is so inferior to that of the other party.
The late Judge Diamantis of this court, citing to our earlier en banc opinion in McClish v. Lee, 633 So.2d 56 (Fla. 5th DCA 1994), rev. denied, 640 So.2d 1107 (Fla.1994), noted that attorney fees awarded pursuant to section 61.16, Florida Statutes "must be based on the need of the party seeking the fees and the ability of the other party to pay those fees." Abernethy v. Fishkin, 638 So.2d 160, 164 (Fla. 5th DCA 1994). Accord White v. White, 21 Fla.L.Weekly D471, ___ So.2d *287 ___ [1996 WL 71257] (Fla. 4th DCA Feb. 21, 1996).
In the case of Straley v. Frank, 612 So.2d 610 (Fla. 2d DCA 1992), rev. denied, 624 So.2d 265 (Fla.1993), a majority of the members of this court,[2] sitting en banc for the Second District, reversed an attorney fee award in toto because there was no showing below that the wife lacked the present ability to pay substantial attorney fees. In that case we relied upon the test explicated in Nichols, and held that there was no basis in the record for a finding that the wife was at a financial disadvantage in obtaining legal assistance.
The predicate question for determination by the trial court in the instant case was whether the assets of the wife were such that she was effectively unable, in whole or in part, to pay for competent legal counsel in this case. If so, then such a fee could be awarded based upon the assets, liquid and otherwise, of the husband. It should be noted, however, that an interpretation of section 61.16 which disregards the concept of need operates as a device to allow the "equitable distribution" of non-marital funds. Such an approach is violative of the test prescribed by the Florida Supreme Court in Nichols and Quanstrom.
In the instant case the trial court arrived at the correct conclusion, albeit for the wrong reason. According to her own financial affidavit, the wife had a net worth of some $187,000.00 at the time of the proceedings below for the payment of her attorney's fee, which is asserted to be approximately $13,000. She could readily afford competent counsel to represent her in the instant case and there is no finding by the trial court otherwise. Section 61.16 should not apply.
NOTES
[1] Creel v. Creel, 423 So.2d 419, 420 (Fla. 3d DCA 1982).
[1] See Taylor v. Orlando Clinic, 555 So.2d 876 (Fla. 5th DCA 1989), which explains the "tipsy coachman" rule.
[2] Judges Dauksch, Cobb, Cowart, Harris and Peterson.