464 So.2d 1342 (1985)
Elizabeth Zater WING, Appellant,
v.
Rodney Clarence WING, Sr., Appellee.
No. AY-117.
District Court of Appeal of Florida, First District.
March 15, 1985.
*1343 Susan S. Thompson and Joseph R. Boyd, of Boyd, Thompson & Williams, P.A., Tallahassee, for appellant.
Robert W. Elrod, of Robert W. Elrod, P.A., Jacksonville, for appellee.
WIGGINTON, Judge.
Having found no error in the circuit court's denial of appellant's motion for contempt and for child support arrearages, we affirm. The court bottomed its ruling on its finding:
That as a result of the action or inaction of the State of Florida and the Plaintiff/Wife, in failing to contact the Husband for a period of over eleven years regarding any back child support payments, the State and the Plaintiff/Wife failed to timely assert their rights, slept upon their rights, and, under the doctrine of laches, are now estopped from requiring the Defendant/Husband to pay any of the arrearages claimed and demanded by the State and/or the Plaintiff/Wife in the Motion for Contempt.[1]
The parties were divorced in 1970. By the final divorce decree, appellant was granted custody of the three minor children and appellee was granted reasonable visitation rights and ordered to pay to appellant, through the Domestic Relations Depository, the sum of $45 per week in child support.
According to the testimony at one of the few hearings recorded and transcribed in this cause, appellee attempted to visit the children with his current wife, but was discouraged from doing so by appellant's threats on the life of the current wife. Appellant, thereafter, was hospitalized for psychiatric problems for approximately one year. During that period, the children were removed from appellant's custody and placed in foster homes.
According to appellee, upon learning that his children were no longer in appellant's custody he contacted the state (the precise agency or department is unknown) and sought to gain custody of them. Appellee was informed that he would be awarded custody if he met certain criteria, such as providing a home with a sufficient number of bedrooms, which criteria appellee proceeded to meet. After complying with the suggested requirements, appellee was informed by the state that he could not have custody of the children and that they would remain in foster care. Appellee replied that he did not intend to continue making child support payments while the children were in foster homes and he had no visitation rights. He made it clear that he would resume support payments when the children were out of foster homes and either placed back in the custody of appellant or in his custody, and expected to be notified at such time as the children were so removed. According to appellee, the state acquiesced in this position, as no action to enforce the final judgment or to collect child support or arrearages was ever instituted against him. The exact nature of the proceedings that appellee instituted in an attempt to gain custody of his children are unknown due to the apparent destruction of juvenile court records prior to the year 1973.
The children were subsequently returned to appellant, but appellee was never notified of that fact or of their whereabouts. He was unaware that they were in appellant's custody until the motion for contempt was filed on September 20, 1982, by the Child Support Enforcement Program. During the eleven-year period from 1971 until 1982, appellee lived continuously in the City of Jacksonville, at one point operating a small, advertised business there; he *1344 never left the state during that time. There is no evidence that appellee was ever contacted by either the state or appellant after 1971, although the evidence indicated that appellant was also a continuous Jacksonville resident.
Ordinarily, child support is a right belonging to the child, Armour v. Allen, 377 So.2d 798 (Fla. 1st DCA 1979), and unpaid child support payments constitute a vested right not subject to modification. Teta v. Teta, 297 So.2d 642 (Fla. 1st DCA 1974). Therefore, the court has no power, absent certain compelling circumstances amounting to exceptions, to cancel or retrospectively reduce the decree as regards past due installments. Teta. However, where a father is granted visitation rights with the correlative duty to make child support payments, he may not be required to make such payments so long as the mother, having primary custody of the children fails or refuses to accord him the visitation privileges so granted. Teta v. Teta; Phillips v. Adams, 339 So.2d 665 (Fla. 4th DCA 1976); Warrick v. Hender, 198 So.2d 348 (Fla. 4th DCA 1967). Also, laches may act as a bar to claims for child support arrearages. Phillips v. Adams; Armour v. Allen; Brown v. Brown, 108 So.2d 492 (Fla. 2d DCA 1959).
In order for a defendant to avail himself of the defense of laches, the evidence must show: 1) conduct on the part of the defendant, or on the part of one under whom he claims, giving rise to the situation of which the complaint is made; 2) the plaintiff, having had knowledge of the defendant's conduct, and having been afforded the opportunity to institute suit, is guilty of not asserting his rights by suit; 3) lack of knowledge on the defendant's part that the plaintiff will assert the right on which he bases his suit; and 4) injury or prejudice to the defendant in the event relief is accorded to the plaintiff or the suit is held not to be barred. Van Meter v. Kelsey, 91 So.2d 327 (Fla. 1956).
Applying those conditions to the facts before us, it is obvious that appellee's conduct of not paying child support gave rise to the instant suit. Given the fact of appellee's continuous and open presence in the city, however, appellant was certainly afforded the opportunity to institute suit, but did not. Appellee testified that as a result of the understanding earlier reached between him and the state on custody and support responsibility, he had no knowledge or expectation that appellant would institute suit. Finally, appellee would most definitely be prejudiced by the advent of a suit or the successful resolution thereof, in that he involuntarily gave up his efforts to gain custody of the children on the basis of representations made by the state, and, due to appellant's inaction, lost the only records that would validate his efforts to gain that custody. In deference to the circuit court's discretion, we hold that the circumstances of this case are so exceptional as to constitute the defense of laches, although we reiterate our admonishment made in Armour that circumstances such as these are rare, and
[i]n all events the welfare of the child is paramount and in the absence of extraordinary facts or strongly compelling circumstances, the action or inaction of a parent will not give rise to a defense of laches barring enforcement of child support arrearages.
377 So.2d at 800.
AFFIRMED.
THOMPSON, J., concurs.
WENTWORTH, J., concurs specially with written opinion.
WENTWORTH, Judge, concurring specially.
I agree only with the conclusion to affirm, on the grounds (1) that appellant does not show error as a matter of law, and (2) that appellant may not urge factual issues on appeal because the record here patently omits much of the evidence before the trial court, for the apparent reason no record was preserved. "Without a sufficient record, the appellate court may not properly consider the [factual] points on appeal and must affirm... ." Steinhauer v. Steinhauer, 336 So.2d 665, 666 (Fla. 4th DCA *1345 1976); Haller v. Santona Land Corp., 275 So.2d 591 (Fla. 1st DCA 1973); Starks v. Starks, 423 So.2d 452, 453 (Fla. 1st DCA 1983).
Our review in these circumstances accordingly should not address the factual particulars of the dispute and should be confined strictly to appellant's contention that as a matter of law a trial court in Florida has no authority to cancel past due installments of child support. On this issue, neither party adequately analyzes the numerous cases cited so as to distinguish the cancellation order in this case from decisions merely refusing to enforce or withholding equitable remedies such as contempt.[1] I am nevertheless persuaded to affirm because appellant has not shown that our precedent precludes cancellation based on "extraordinary facts or strongly compelling circumstances" which may sometimes be involved in a laches defense. See Armour v. Allen, 377 So.2d 798, 800 (Fla. 1st DCA 1979).[2]
Absent a reviewable record of all the material evidence in the present case we may not, in my opinion, find that the circumstances recited by the trial court do or do not constitute a laches defense permitting cancellation of the $29,000 arrearage here. That amount was advanced by HRS at the rate of $15.00 weekly on behalf of the three children involved here over an 11-year period.[3] The point at issue appears to be novel, complex and deserving of determination in the context of an appeal properly presenting the merits of permissible defenses and adequately analyzing the rapidly developing law in this area.[4]
NOTES
[1] The court did order, however, that appellee recommence making child support payments to appellant.
[1] For example, the decision in Brown v. Brown, 108 So.2d 492 (Fla. 2d DCA 1959), was to affirm an order quashing contempt proceedings in which laches was relied on as a defense; and in Phillips v. Adams, 339 So.2d 665 (Fla. 4th DCA 1976), remand was to permit evidence on asserted defenses of laches and rejected visitation, asserted in a contempt proceeding. In a seminal case in this area, Satterfield v. Satterfield, 39 So.2d 72 (Fla. 1949), the Supreme Court reversed only the contempt portion of a support decree, for lack of willfulness in nonpayment and for the custodial parent's conduct in seeking a contempt order "knowing that she had not obeyed the terms of the decree" on visitation. Notably, the court affirmed (or left standing) the order for payment of the arrearage, but that distinction was lost in the reliance on Satterfield (and other cases) in Hardy v. Hardy, 118 So.2d 106 (Fla. 1st DCA 1960), as authority to cancel and discharge support arrearages for children based on a parent's inequitable conduct, but holding to the contrary as to accrued alimony (contra Armour v. Allen, 377 So.2d 798, 800).
[2] In contrast with the rule permitting cancellation of delinquent child support for extraordinary inequitable conduct of a custodial parent, no such reciprocal principle is recognized with respect to visitation rights which are controlled by the salutary rule that visitation may not be changed or denied based merely on non-payment of support. Howard v. Howard, 143 So.2d 502 (Fla. 3d DCA 1962), citing Yandell v. Yandell, 39 So.2d 554 (Fla. 1949).
[3] Cf. Department of Health & Rehabilitative Services v. Walker, 411 So.2d 347, 351 (Fla. 3d DCA 1982), recognizing statutory standing in HRS and concluding a "wife's conduct cannot act as an estoppel to preclude a claim on behalf of the child." Although that case related to an initial support award, it serves to emphasize the need for close examination of the premises underlying past decisions relating to support orders. Cf. Application of Meyers, 29 Misc.2d 163, 219 N.Y.S.2d 63 (1961), noting that "under the Uniform Act, a basic assumption ... was that the [noncustodial parent] was responsible for the support of... children regardless of the acts of the [custodial parent]." A consequence of the missing record in the present case is, of course, that we have no evidence of effort by HRS, or lack of it, to locate appellee. However, for at least ten years following return of the children to the mother having custody under the original decree, following her temporary hospitalization, the appellant agency appears to have contributed in no way to appellee's noncompliance with the support order or to the conceded total absence of inquiry by him with respect to his children. He testified:

Q. After that time did you try to contact ... the State or anybody else to find out about the children?
A. No... .
[4] See Anno. 5 A.L.R.2d 1015, 95 A.L.R.2d 118, 70 A.L.R.2d 1250, 1269, and 137 A.L.R. 884.