473 So.2d 228 (1985)
Ronald Thurman ROBINSON, Appellant,
v.
STATE of Florida, Department of Health and Rehabilitative Services, On Behalf of Margaret Ann Robinson, Appellee.
No. 84-32.
District Court of Appeal of Florida, Fifth District.
June 27, 1985.
Rehearing Denied August 1, 1985.
Bill McCabe of Shepherd, McCabe & Cooley, Orlando, for appellant.
Gerladyne H. Carlton of Carlton & Carlton, P.A., Lakeland, for appellee.
SHARP, Judge.
Robinson appeals from a final judgment rendered by the lower court in a URESA action, Chapter 88, Florida Statutes (1981), which required him to pay $17,793.21 in child support arrearages based on an Ohio dissolution decree. He sought to raise the defense of laches. The trial court disallowed this defense on the grounds that it was not applicable to this cause of action, that he failed to establish any prejudice to petitioner's delay in seeking enforcement, and that he should have taken affirmative steps in the court in Ohio to have the support terminated or suspended until the former wife and custodial parent allowed him visitation with his children. We reverse.
The record in this case establishes that the parties were divorced in Ohio in 1966. Under the divorce decree Robinson was required to pay $32.50 per week for the parties' three children until they reached their majority. Robinson made the child support payments on a fairly regular basis until May of 1972. The former wife then remarried, and Robinson testified when he tried to visit the children, his former wife's new husband threatened to kill him. The former wife then talked with him and *229 agreed that if he would no longer visit the children "she would just let the support slide."
Relying on this agreement, Robinson did not see his children again until 1978. From time to time, he sent money directly to his children. The former wife made no effort to enforce the child support payments after 1972; nor did she ever demand or request that they be made.
Then, in April of 1982, the former wife, still a resident of Ohio, filed a petition for enforcement of child support arrearages in Ohio. The last of the three children had turned eighteen years of age a few months after the former wife filed the petition to enforce. The Ohio Court filed a certificate under URESA in Florida, and Robinson was served in Florida, where he was then residing.
It is clear that parents may not contract away the rights of their children to support; nor may they waive a child's right to support by acquiescing in the obligated parent's nonpayment of support. Lee v. Lee, 157 Fla. 439, 26 So.2d 177 (1946); Lang v. Lang, 252 So.2d 809 (Fla. 4th DCA 1971). However, the defense of laches, in the presence of extraordinary facts or compelling circumstances and where the child's welfare is not jeopardized, may bar enforcement of child support arrearages. Wing v. Wing, 464 So.2d 1342 (Fla. 1st DCA 1985).
Here, the former wife filed the action for arrearages shortly before the last of the children reached majority. Thus, the children's welfare would not be jeopardized by denying the arrearages. The former wife is not pursuing the children's current needs, but seeking to recoup payments she and her current husband expended for the children during their minority. There is no compelling reason not to apply laches as to her rights.
Next, circumstances were proven which could give rise to the defense of laches. First, the former wife did more than acquiesce in the appellant's nonpayment. She agreed the appellant could discontinue the child support payments in return for his surrendering visitation rights. He complied, and that can never be recouped. Second, nothing in the record explains why the former wife delayed ten years before seeking to enforce her rights to the arrearages. Finally, the appellant was clearly prejudiced by the delay. He gave up his visitation rights based upon the former wife's representations that he would be absolved of his support duty. Now, he faces an accumulated debt of $17,793.21. He could have paid the child support in small increments, but ten years accumulation has grown into an intolerable lump sum.
We think the foregoing factors amount to circumstances sufficiently compelling to allow Robinson to raise the defense of laches as a bar to the enforcement of the child support arrearages by his former wife in this case.[1] This is not merely a defense based on denial of visitation privileges which is inapplicable under Florida law to enforcement of child support obligations.[2] For these reasons, we reverse, and remand for a new trial.
ORFINGER, J., concurs.
COWART, J., concurs in part; dissent in part, with opinion.
COWART, Judge, concurring in part; dissenting in part:
Appellant, a father, defended in Florida a URESA action for child support initiated in Ohio by the mother by moving to dismiss and also by filing two affirmative defenses, as follows:
Affirmative Defense I: "... the Petitioner has affirmatively denied visitation *230 rights to the Parties' minor children by the Respondent, that the last time that the Respondent was denied visitation rights he advised the Petitioner that he would not pay child support until he was granted visitation rights, and he has not been granted visitation rights since... ." Affirmative Defense II: "... the Petitioner's claim is barred by laches, in that the Petitioner has made no demand against respondent for payments for twelve (12) years, that the Petitioner was aware of, and knew that the Respondent would not make child support payments so long as she denied and refused to allow the Respondent to visit with the Parties' minor child, that the Petitioner now seeks support for the children after they have all reached majority, that the Petitioner knew the whereabouts of the Respondent at all times, that further, by the delay in filing the Petition, there is no way that any exact amount of arrearages could be ascertained, and therefore, the Petitioner's Petition for enforcement of support payments should be barred by the doctrine of laches."
I do not read these defenses to allege any "agreement" between the parents relating to payment of child support. These affirmative defenses were not procedurally attacked but were the subject of an evidentiary hearing or trial in which, among other things, the father testified, "I was denied visitation by babysitters.  I was unable to pick up the children and my ex-wife called me and asked why I was late with the payments and I told her no visitation, no money.  She said I couldn't come out to the farm anyway because her husband would shoot me  and she agreed then that since Paul wouldn't let me see the children that she would just let the child support slide." The mother, who initiated the URESA proceeding in Ohio, did not testify at the hearing in Florida. Admittedly, the trial court's finding that the father's two affirmative defenses were "not applicable as a defense to this cause" is ambiguous. However, the trial court's conclusion is entitled to be upheld on several different bases. First, the defenses as pleaded allege no "agreement" by the mother. Second, the trial court, as fact-finder, had the authority and discretion to find as a matter of fact that the father had not proved his so-called "defenses" on the basis of credibility and the weight of the evidence. I would affirm the trial court on either basis.
Divorced parents have a fiduciary responsibility to their children to protect and enforce the children's rights to support from the other parent and to visit with, and be visited by, both parents. Therefore, even if there were no procedural or evidentiary basis to uphold the trial court's finding that the father had not proved his affirmative defenses or an "agreement" in this case, I would hold, as a matter of law, that any such agreement between divorced parents that the custodial parent would give up or waive the children's legal right to receive periodic monetary support from their non-custodial parent in exchange for the non-custodial parent's agreement not to visit the children, is void as against public policy and should be discouraged by being denied all legal effect. In making any such agreement for their personal interests parents breach their obligations to the children and deprive the children of their right to more adequate support and also of their right to know and to visit with both of their parents. If a father's court-granted visitation rights are threatened he should seek help from the court and not trade them to the mother for the release of his child support obligations. Likewise, the custodial mother entitled to receive child support should enforce the children's right to receive support from their father and should not attempt to betray her trust and attempt to waive those rights or use them to bargain with the father about visitation rights or anything else. Further, long time interest free use of money that was legally due to be paid as periodic child support under a court order constitutes no legal prejudice or detriment to an obligor parent who fails to pay it as will support a waiver defense. Accordingly, I would uphold the trial court on the basis that the two pleaded affirmative defenses are insufficient as a matter of law.
In this case the mother should not be entitled to recover delinquent child support *231 from the father merely because she was the custodian of the children and was, as trustee for the children, entitled to receive the monies due them from their father under the Ohio support order.[1] However, she should be entitled to recover as reimbursement and restitution all such sums, if any, as she can prove that she actually paid or expended for necessities for the children, not on account of her own duty to support the children, but in discharge of the legal duty of the father to support the children in keeping with his standard of living. If the children did not actually receive the benefits that the father's support obligation was intended to provide the mother is not now entitled to that support money to treat as her own.
Accordingly, I would affirm the trial court's factual finding against the father's "no visitation" and "laches" defenses but I would reverse as to the amount awarded the mother and limit it to any cause of action she may have on the theory of reimbursement and restitution for sums she actually paid or expended on behalf of the children in performance of the father's legal duty to support the children in keeping with his standard of living.
NOTES
[1] We do not need to distinguish Thompson v. Lancaster, 458 So.2d 442 (Fla. 5th DCA 1984), a per curiam affirmance without opinion. It is not precedential authority, because the reasons for the affirmance cannot be determined. Dep't of Legal Affairs v. District Court of Appeal, 5th District, 434 So.2d 310 (Fla. 1983).
[2] § 88.271, Fla. Stat. (1983); see also State ex rel. Rock v. Rock, 429 So.2d 1351 (Fla. 2d DCA 1983).
[1] See Cronebaugh v. Van Dyke, 415 So.2d 738 (Fla. 5th DCA 1982), rev. den. 426 So.2d 25 (Fla. 1983); Camps v. Dept. of H.R.S., 459 So.2d 1140 (Fla. 5th DCA 1984).