WENTWORTH, Judge.
Appellants seek review of an order by which appellants’ URESA claim for child support arrearages was denied. We reverse, finding that the conclusion below is not based on competent substantial evidence, and that the defense of laches is not applicable.
The marriage of these parties had been dissolved by a 1971 Kansas order which granted Rosa Newman custody of the parties’ minor child, and ordered Ronnie Newman to pay $75 per month child support, payable to the clerk of the court. Rosa Newman submitted an affidavit in connection with the URESA petition, asserting that the mandated child support payments had not been made except for partial payments in 1978, in 1980, and a partial arrear-age payment in 1988. At a hearing on the petition an HRS witness testified that “an intercept of IRS” was also received, leaving a child support balance due of $13,-952.67.
The challenged order expressly finds that Rosa Newman “advised [Ronnie Newman] ... that should he give up all rights of visitation then he would not be required to pay child support.” Even assuming (without deciding) the effectiveness of such an agreement, the only evidence to support this finding is Ronnie Newman’s testimony that when he visited Rosa Newman’s home and tendered a cash payment directly to her shortly after the dissolution order was entered she “throwed it at me” and “told me she didn’t want me back there no more.” When counsel asked whether Ronnie Newman had gone to this ex-wife’s home in an attempt to make a payment of child support, Ronnie Newman responded, “I went there — it wasn’t necessarily as child support. I offered her some money because I was fixing to leave the state of Kansas. Instead of me going to the courthouse to make the payment there, I just wanted to give her cash money.”
The dissolution order required Ronnie Newman to make his child support payments through the clerk of the court, and Rosa Newman’s response to Ronnie Newman’s visit is consistent with a desire to adhere to this mandated procedure. Counsel’s further question as to whether Rosa Newman said, “Stay away or words to that effect, T don’t want your money, just stay away from us,’ ” was answered with Ronnie Newman’s response, “That’s right. *1003 She told me she didn’t want me back there no more.” This statement is likewise consistent with a desire to adhere to procedures mandated in the dissolution order. Ronnie Newman’s testimony does not establish the alleged waiver of the child support obligation. Such an intention cannot be predicated upon the ambiguous description of the occurrences at Rosa Newman’s home when, shortly after the dissolution order was entered, Ronnie Newman made a personal visit and departed from the procedures mandated in the dissolution order. The record thus does not support the court’s finding that Ronnie Newman was advised that he would not be required to pay child support.
While it is generally indicated that a child support arrearage ordinarily may not be retrospectively cancelled, see e.g., Teta v. Teta, 297 So.2d 642 (Fla. 1st DCA 1974), the doctrine of laches has been approved as a defense to an arrearage claim in some circumstances. See Wing v. Wing, 464 So.2d 1342 (Fla. 1st DCA 1985); see also, Robinson v. HRS, 473 So.2d 228 (Fla. 5th DCA 1985). For reliance on this doctrine the plaintiff must have failed to assert legal rights despite an opportunity for legal action, the defendant must have been unaware that the plaintiff would assert such rights, and the defendant must have been prejudiced by the undue delay. See Van Meter v. Kelsey, 91 So.2d 327 (Fla.1956); Wing. While Rosa Newman may have had the right to obtain a judgment as to the outstanding arrearage, her ability to enforce such a judgment was clearly hindered by her lack of knowledge as to Ronnie Newman’s whereabouts. Although she could have attempted to obtain this information from his parents, it was Ronnie Newman’s act in departing the state without any notice as to his future residence which made his whereabouts unknown. And Ronnie Newman cannot reasonably claim a lack of knowledge that Rosa Newman would assert her right to the arrearage, based simply upon the ambiguous incident as described above. We find no basis for Ronnie Newman to assume that he had been released from his support obligation, and his claim of prejudice is also equivocal. He states that he would have sought visitation “if I was paying the support,” while testifying only that he “most likely” would have paid the child support but for his understanding that this obligation was forgiven. We note also that despite his purported “understanding” Ronnie Newman admitted that he did make some payments, including one immediately after the incident at Rosa Newman’s home, and the evidence also reflects payment in 1980 and 1988.
Even if the evidence had demonstrated sufficient prejudice for a laches defense, Ronnie Newman has not shown that he was unaware of the continuing child support obligation, or that Rosa Newman failed to timely avail herself of legal recourse. And while the child’s emancipation due to reaching the age of majority is a circumstance to be considered, see Robinson v. HRS, supra, the support arrearage may still be enforced by judgment and collected. See Gibson v. Bennett, 561 So.2d 565 (Fla.1990). Also see Stephenson v. Stephenson, 52 So.2d 684 (Fla.1951), where the supreme court approved an arrearage judgment despite the child’s emancipation and a 21 year delay by the custodial parent in pursuing legal relief.
The order is reversed and the cause remanded for further consistent proceedings.
BOOTH and MINER, JJ., concur.