633 So.2d 56 (1994)
Brenda K. McClish, etc., Appellant,
v.
Mark E. LEE, etc., Appellee.
No. 93-243.
District Court of Appeal of Florida, Fifth District.
February 11, 1994.
*57 Raymond A. McLeod, McLeod, McLeod & McLeod, P.A., Apopka, for appellant.
Brett L. Swigert, Gaylord & Gaylord, P.A., Eustis, for appellee.

ON REHEARING EN BANC
HARRIS, Chief Judge.
After a short marriage and two children, Mark and Brenda Lee (now Brenda McClish) divorced in 1974. Pursuant to a property settlement agreement incorporated in the Final Judgment, Mark was required to pay Brenda twenty-five dollars per week as a contribution toward the child support for the children whose custody was awarded to her.
Mark has paid no support under the Final Judgment. However, in 1975, the parties entered into a new agreement under which Mark agreed to give up his visitation rights and, in consideration therefor, Brenda released Mark from any obligation to pay support in the future. This agreement was filed with the court on February 18, 1976. Neither party, at that time, petitioned the court to approve the agreement.
Brenda honored the agreement throughout the minority of the children. Both children were emancipated by July, 1991. One child is now deceased; the other has disclaimed any interest in delinquent child support payments.
In 1991, Mark inherited some money from his father. Soon thereafter Brenda, for the first time, filed a contempt action to collect $36,125.43 in child support arrearages accruing during the sixteen years she had remained silent. The trial court, instead of awarding the entire arrearage, awarded her only that portion of the court-ordered support that accrued from the date of the Final Judgment until the date of her agreement waiving any further support. She appeals; we affirm.
Brenda was not seeking the arrearages on behalf of the children, but rather for reimbursement to her to compensate her for moneys she may have expended in raising the children. In other words, she was seeking money owed to her.[1]
Clearly, parties to a marriage cannot, as a matter of law and public policy, contract away the child's right to support. This principle is so well established that it needs no citation of authority. Just as clearly, *58 however, parties do have the right to contract as between themselves as to whom will assume particular obligations. For example, a mother who earns a high income and is well able to provide all necessary child support should be permitted, as between herself and her husband, to agree to provide the child support in exchange for the husband's interest in the marital home. Such an agreement cannot be interpreted as "contracting away the child's right of support." If the mother thereafter becomes unable or unwilling to provide the child support, as between the child and the father, the father would have an absolute obligation to provide the support. But if he does, he should have an action over against the wife, in contract, for a return of his interest in the home.[2]
In our case, the wife is seeking money due her which she contracted away. The issue, therefore, is whether the contract is a valid basis for denying the mother's claim. The mother contends that there was a failure of consideration because, even though the father contractually gave up his right to visitation, he continued, with her consent,[3] to exercise some visitation. We see a distinction, however, between visitation as a matter of enforceable right and visitation based on the goodwill of the former wife. Mark clearly gave up something in exchange for the agreement. The question, then, is whether the mother who received the benefit of her bargain, can repudiate the agreement after the children reach majority.
Although we are concerned with the public policy implications of permitting a father to contract away his visitation rights (which quite obviously will also affect the child's right to the companionship of his father) and might hold such agreement invalid in a suit brought on the child's behalf to set it aside, we recognize, as did this court in Robinson v. State Dept. of Health & Rehab., 473 So.2d 228 (Fla. 5th DCA 1985), that under certain circumstances the absence of a parent's visitation may be beneficial to the family unit. For that reason we hold that such an agreement is, at most, voidable and not void.
Consistent with Robinson, we agree with the trial court's implicit finding that the mother's delay until the visitation issue is no longer relevant, constitutes laches which bars her now from challenging the agreement.[4]
The final issue concerns the determination of attorney's fees. The trial judge indicated that he would bifurcate the proceedings and conduct a separate hearing on the issue of attorney's fees. As a result of his statement, neither McClish nor Lee placed evidence in the record as to Lee's ability to pay attorney's fees. Although it is within a trial court's discretion to grant or deny attorney's fees, Lester v. Lester, 547 So.2d 1241, 1243 (Fla. 4th DCA 1989), there has to be an evidentiary basis for the determination. See § 61.16, Fla. Stat. (1991). The court did hear testimony that McClish could not afford an attorney unless she entered into a contingency fee arrangement with her trial counsel. The court also heard that Lee was able to pay her attorney's fees and child support arrearage based upon an admission he filed. The trial judge's order is not consistent with the testimony presented. We remand the issue to the trial court so evidence *59 can be presented for a factual determination of this issue. Jones v. Jones, 606 So.2d 748, 749 (Fla. 5th DCA 1992), quashed on other grounds by 624 So.2d 263 (Fla. 1993). Parenthetically, the trial judge raised the question of whether the Florida Rules of Professional Conduct, Rule 4-1.5(f), allows an attorney to take this case on a contingency arrangement. This issue should be fully argued by both counsel.
AFFIRMED in part, REVERSED in part, and REMANDED for determination of attorney's fees.
HARRIS, C.J., and DAUKSCH, COBB, GOSHORN, PETERSON, GRIFFIN and DIAMANTIS JJ., concur.
THOMPSON, J., dissents with opinion in which W. SHARP, J., concurs.
THOMPSON, Judge, dissenting.
I respectfully dissent.
This court adopts the principle that parents can contract "as between themselves as to whom will assume particular obligations." Although this principle sounds benign, it is very malignant if one of the obligations being negotiated is child support compelled by a court order. If we accept this principle as valid, then court orders that compel child support can be revised or rewritten, not by judges or by courts of competent jurisdiction, but by the parties themselves. This principle is not the law nor should it be. Child support is a right belonging to the children, not to the custodial parent. Armour v. Allen, 377 So.2d 798 (Fla. 1st DCA 1979). It is a right the custodial parent cannot waive or contract away. Robinson v. State Department of Health and Rehabilitative Services, 473 So.2d 228, 229 (Fla. 5th DCA), appeal dismissed, 478 So.2d 53 (Fla. 1985). Regardless of the income of the parents, once child support is court ordered, any modifications to reduce that level of support must be with court approval or the nonpaying parent can be sanctioned by the court. Public policy requires that parents obey court orders when it comes to the issue of support for their children. They have no choice. If they have the ability, they must pay court ordered child support. If they do not have the ability to pay, they must seek relief from the court. Self help is neither contemplated nor condoned.
In this case, the agreement was filed with the clerk of the court in the court file, but the agreement was never incorporated by order into an amended final judgment of dissolution. Therefore, the court order that compelled child support was valid up to and including the emancipation of the youngest child. See Smithwick v. Smithwick, 343 So.2d 945, 947 (Fla. 3d DCA 1977) (holding that a trial court "is without jurisdiction to modify child support ... payments where no pleading is filed directed to modifications thereof"). If a court cannot modify court ordered child support, how can parents? I take the unusual position, it appears from this court's opinion, that lawfully entered court orders mean what they say and must be followed. Since the parents cannot contract away the children's right to child support, the agreement is not only voidable, but void ab initio.
Assuming arguendo that the agreement was binding, the parties agreed that each would forfeit a right as consideration for signing the agreement: McLish would give up the right to court ordered child support and Lee would give up the right to court ordered visitation. Lee never did give up visitation. He visited with the children as often as he wished and with no restrictions or interference from McLish. Not only did he visit with the children, they lived with him. The two boys, Mark and Buddy, lived with Lee for a time[1] during which he taught the boys through in-home schooling. McClish testified that she never refused visitation between Lee and the children. Because of her desperate financial condition, Buddy lived with Lee's mother while McClish lived in Jacksonville. Lee saw his son while he lived with his mother. What does this court make of this visitation by Lee? This court opines that even though visitation was court ordered, Lee could contract away his right to visitation and still visit because of the "goodwill of the former wife." In essence, if she *60 was foolish enough to contract away the children's right to child support, yet have the "goodwill" to allow Lee to visit, that is her problem and, thus, acceptable to this court. I find it unacceptable and repugnant to public policy. And, even assuming the agreement was binding, it must fail for lack of consideration.
This court also attaches significance to the disclaimer of any interest in delinquent child support payments by the surviving son, Mark, when discussing whether McLish is seeking the money for herself or for the children. This issue should have been disposed of immediately. This waiver was not before the trial court. The trial court did not receive or use the written waiver signed by Mark because it was excluded as hearsay. If it was not used by the trial court, it cannot be used by the appellate court. Further, the right to child support does not terminate when the child is emancipated. The right continues as a choose in action for the benefit of the custodial parent who expended funds to raise the children. As the Supreme Court of Florida said in the case of Gibson v. Bennett:
Upon emancipation of a minor child, the support dependent parent is not magically reimbursed for personal funds spent nor debts incurred due to nonpayment of child support. Hardships suffered by a family do not disappear. A family's feelings of indignation from abandonment by the nonpaying parent or from past reliance on public assistance are not forgotten. Society's interest in ensuring that a parent meets parental obligations must not be overlooked simply because the child has attained that age of majority. The support obligation does not cease; rather it remains unfulfilled. The nonpaying parent still owes the money.
As this court has previously stated, we have no desire to make this state a haven for those who wish to avoid their support obligations ... In our view, emancipation does not extinguish a support obligated parent's responsibility to pay the past due support.
561 So.2d 565, 572 (Fla. 1990) (holding that circuit courts have jurisdiction to enforce a foreign judgment for arrearage of alimony or child support by means of equitable remedies), See also Kutz v. Fankhanel, 608 So.2d 873 (Fla. 5th DCA 1992) (Sharp, W., J., concurring) (accepting the holding in Gibson). Since McClish has expended the funds, she has the right to bring an equitable action to force payment, the written waiver by Mark notwithstanding. Emancipation cannot act as a bar to the custodial parent bringing this action since she has expended the funds.
The court also relies upon the doctrine of laches to prevent McClish from recovering. Although the courts of Florida have allowed the defense of laches in cases involving child support arrearage, they have done so sparingly. See Robinson, 473 So.2d 228; Wing v. Wing, 464 So.2d 1342, 1344 (Fla. 1st DCA 1985). In both cases, the court discussed the very unusual circumstances that were "sufficiently compelling" to require the court to set aside the child support arrearage. There are no unusual circumstances in this case except the length of time that passed before McClish exercised her rights. McClish testified that she did not bring an action for contempt against Lee because he had no ability to pay any court ordered child support. So even if the court had found that he owed the money, without an ability to pay, he could not be forced to pay the child support. True, McClish did wait 15 years to bring the lawsuit, but it was brought shortly after she determined that Lee had the ability to pay the child support arrearage; a fact Lee admits. Because there is no statute of limitations on child support arrearage, the motion was timely filed. See Popper v. Popper, 595 So.2d 100, 103 (Fla. 5th DCA), review denied, 602 So.2d 942 (Fla. 1992).
McClish is before this court because of her demonstrated "goodwill": her goodwill as a former wife allowing her former husband, Lee, to waive the children's right to child support; her goodwill by allowing Lee to visit with their children when he had forfeited that right; her goodwill as a mother by working two jobs and getting food stamps to support her family when they were young; her goodwill as a mother as she sent her child to live with Lee's mother because she *61 was unable to care for both children; and her goodwill as a mother by often going without food, dental care, and medical care to ensure that her children's needs were met. This court should show McClish some goodwill by requiring that Lee follow the court order and pay the child support arrearage. I would reverse the trial court and remand for entry of a judgment in the amount of $36,125.43, plus interest, and for a hearing on the issue of attorney's fees.
W. SHARP, J., concurs.
NOTES
[1] This same distinction is made in Robinson v. State Dept. of Health & Rehab., 473 So.2d 228 (Fla. 5th DCA 1985):

Here, the former wife filed the action for arrearages shortly before the last of the children reached majority. Thus, the children's welfare would not be jeopardized by denying the arrearages. The former wife is not pursuing the children's current needs, but seeking to recoup payments she and her current husband expended for the children during their minority.
[2] The dissent would hold that after the judgment of dissolution, the parties are not free to agree, as between themselves, to alter any provisions of the judgment without first obtaining the court's approval. While we agree that the court might refuse to recognize the amendments made by the parties that it has not approved, in this case the court did, in fact, approve and enforce the parties' modification. Concerning the dissent's point that there were no pleadings before the court that would authorize the court to approve the parties' amendment, we submit that the filing of the amendment with the court is in the nature of a stipulation. We find the court had the discretion to approve the agreement and find no error.
[3] Perhaps at her insistence. As the trial judge court found: "The children were left with the former husband's mother during substantial periods of time, and were left at the former husband's home at the former wife's request on at least two occasions."
[4] The trial court found, "the former husband complied with the agreement and the time that he has lost with the minor children can never be recouped. One child is now deceased and the second child is above the age of majority."
[1] Mark lived with Lee for about nine months; Buddy lived with him for about one month.