663 So.2d 665 (1995)
Michael Stewart PEREGOOD, a Minor, etc., et al., Appellant,
v.
James COSMIDES and Serena Peregood, Appellee.
No. 94-1771.
District Court of Appeal of Florida, Fifth District.
October 27, 1995.
Rehearing Denied December 7, 1995.
*667 Gary Shader of Shader & Wilson, Maitland, for Appellant Michael Stewart Peregood.
Corey R. Stutin of Corey R. Stutin, P.A., Winter Springs, and Stanton L. Cobb of Stanton L. Cobb, P.A., Orlando, for Appellee James Cosmides.
No appearance for Appellee Serena Peregood.
James A. Sawyer, Jr., District Legal Counsel, Orlando, for Amicus Curiae Department of HRS.
W. SHARP, Judge.
Michael Peregood, a minor, appeals from an order granting his natural father's motion to dismiss Michael's challenge of his adoption by his natural mother. Michael filed a declaratory action to vacate his final judgment of adoption, on the grounds it was a sham. Cosmides, his natural father, challenged Michael's standing to bring the suit. The trial judge dismissed his complaint with prejudice, based on the pleading. We disagree and reverse.
The record shows that Michael was born on November 6, 1991. His natural parents were Serena Peregood and James Cosmides, who never married. Cosmides brought a petition to establish paternity after Michael's birth. A final judgment of paternity was entered on March 14, 1992, which established Cosmides as Michael's natural father, and which required Cosmides to pay child support in the sum of $500 per month.
Subsequently, animosity developed between Cosmides and Serena over Cosmides' visitation with Michael. His parents then "settled" the dispute by agreeing that Cosmides would forego visitation in exchange for Serena's forfeiture of the $500 per month child support.[1] However, such an arrangement is not enforceable under Florida law[2] and Cosmides would have been exposed to possible arrearages in child support as a result of the order for support.
To implement this agreement, each parent executed a consent to Michael's adoption. Michael continued to live with Serena, and she petitioned to readopt her own child. On December 7, 1993, a final judgment of adoption was entered, which established Serena as the sole adoptive parent and terminated Cosmides' parental rights and obligations to Michael, relieving him of any responsibility of support on Michael's behalf under the previous order. § 63.172, Fla. Stat. (1993).
During the adoption proceedings, Serena assured the court she would not need to seek public assistance in order to support Michael. However, her optimism was short-lived. Thereafter, she sought and obtained public assistance for Michael. On April 7, 1994 Michael filed a complaint for a declaratory judgment and petition to vacate and rescind the final judgment of adoption, through his best friend, his maternal grandmother.
On appeal, Cosmides argues that Michael lacks standing to bring the declaratory action. He also claims that a declaratory action was improper to challenge the judgment of adoption, and that Michael was limited to bringing an action under Rule 1.540, which is now procedurally barred because more than a year has elapsed since the final judgment of adoption was entered.[3]
*668 Cosmides argues that only the father or mother of a child has standing to contest an adoption decree, since they are the only parties to the adoption suit. Under section 63.062, it is not necessary to obtain the consent of a child to an adoption, who is under the age of twelve. However, it does not necessarily follow that a child has no standing, in all cases, to challenge an adoption, which will result in his injury.
A party has standing when he or she has a sufficient stake in a justiciable controversy. Sierra Club v. Morton, 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972). Children have been held to have standing to protect their rights and interests in many kinds of cases. See Otero v. Mesa County Valley Sch. Dist. No. 51, 568 F.2d 1312 (10th Cir.1977) (to challenge alleged discriminatory hiring practices involving Mexican-American teachers and support personnel); Bossier Parish School Board v. Lemon, 370 F.2d 847 (5th Cir.1976), cert. denied, 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967) (school children can sue under Title VI); Hernandez v. Ruiz, 812 F. Supp. 734 (S.D.Tex. 1993) (under Migrant and Seasonal Agricultural Worker Protection Act for assessed housing fine violation). In Florida, children have been held to have standing to sue as taxpayers. Chiles v. Children A, B, C, D, E and F, 589 So.2d 260, 263 n. 5 (Fla. 1991).
To establish standing it must be shown that the party suffered injury in fact (economic or otherwise) for which relief is likely to be redressed and, in non-constitutional situations, that the interest sought to be protected falls within a statutory or constitutional guarantee (i.e., the zone of interest ...). See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The injury must be distinct and palpable. See Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). It may not be abstract, conjectural or hypothetical. Allen v. Wright, 468 U.S. 737, 741, 104 S.Ct. 3315, 3319, 82 L.Ed.2d 556 (1984).[4] It may be aesthetic, conservational, recreational, economic, or reflect a spiritual stake in First Amendment values of free speech and the establishment clause. Association of Data Processing, 397 U.S. at 154, 90 S.Ct. at 830. See also Sierra Club v. Morton.
Under the unusual and unique facts of this case, we think Michael established a significant interest and demonstrated the necessary *669 injury in fact to establish standing to challenge his adoption. We stress, however, that this finding is premised on the unusual facts surrounding this case, and that this opinion is to be narrowly construed.
We can locate no Florida cases in which the parents contracted away all legal rights to their child to relieve themselves of child support obligations or visits by the other parent. To this extent, this is a case of first impression in Florida. Such an agreement runs into the teeth of Florida's strong public policy to provide support for children by their parents, and not to countenance circumvention of a parent's duty to support his or her children. Further, this sham adoption appears patently against this child's best interests.
Florida cases hold that where fraud has entered into an adoption proceeding, the adoption decree can be set aside. Jefferis v. May, 603 So.2d 84 (Fla. 5th DCA 1992); Andy v. Lessem, 595 So.2d 197 (Fla. 3d DCA 1992). The fraudulent procurement of a natural parent's consent to the adoption of a child is sufficient to warrant setting aside the adoption. Lambert v. Taylor, 150 Fla. 680, 8 So.2d 393 (1942). It logically follows that consent to an adoption for the purpose of abrogating a parent's obligation of child support is a sham and a sufficient ground to set aside an adoption decree for fraud.
The Wyoming Supreme Court considered a similar situation in an adoption case in State ex rel T.R.L. by Avery v. R.L.P., 772 P.2d 1054 (Wyo. 1989). T.R.L. was born out of wedlock and there, as here, the mother received public assistance from the state. The state then initiated a paternity action against the natural father seeking child support, and a judgment was entered establishing the father's paternity, and requiring him to pay the sum of $138 per month in child support.
After the father had made one support payment, the mother denied visitation and requested a relinquishment of parental rights and consent to adoption from the father. In exchange she agreed to forfeit the court ordered child support. The state brought suit to terminate the adoption and both the father and the mother advocated the validity and finality of the prior termination order.
One of the issues considered by the Wyoming Supreme Court was:

Whether it is possible for natural parents to bargain away the rights of their child in pursuit of their own interest, even though those rights may be adverse to those of the child. (emphasis supplied)
Id. at 1054. The court found that the "machinations of the parents in attempting to avoid their responsibilities," resulted "in decisions below in which the self-serving interests of the parents prevailed over the best interests of the child." Id. And, it noted that it was clear

[a]doption was never contemplated in this case. As argued by the state in the proceeding below, the mother has no plans for marriage and hence no plans for an adoption of the child by a stepfather. We can only conclude that the attempt by these parents to posture this case as an adoption case is merely an artifice designed to deter attention from the fact that they bargained away the fundamental rights of the child in a proceeding in which the child's best interests, if they were considered, were given short shrift. (emphasis supplied)
T.R.L. at 1058. That evaluation is equally applicable here.
The procedure utilized by Michael's parents in this case violates the intent and purposes of the Florida adoption law. The Legislative intent under Chapter 63 adoption proceedings is to "protect and promote the well-being of persons being adopted." Section 63.022(1). The courts are instructed to enter orders necessary and suitable to "promote and protect the best interests of the person to be adopted." Section 63.022(2)(1). The actions taken in this case clearly do not protect or promote Michael's well-being.[5] *670 Rather, they have placed him in economic jeopardy, depriving him of a substantial source of financial support, substituting instead, public assistance. The parents' agreement produced a sham adoption, the sole purpose of which was to circumvent the law, or to do that which the law precludes: relieve a parent of support obligations, thereby forcing the child to become dependent upon the state for public assistance.
We also reject Cosmides' arguments that Michael may not bring this case as a declaratory action. The principal purpose of the Declaratory Judgment Act is to obtain a judgment on rights which have never before been determined. See deMarigny v. deMarigny, 43 So.2d 442, 445 (Fla. 1949). We think Cosmides' reliance on Mistretta v. Mistretta, 566 So.2d 836 (Fla. 5th DCA 1990), in support of his contention that Michael's rights and interests were fully represented below by his parents is misplaced. Mistretta was a child support case, not an adoption case, in which the child's economic interests were, de facto, fully protected and argued by his mother.[6] But in this particular case, the only interests represented below were those of Serena and Cosmides. Consideration of Michael's interests was sadly lacking. Because Michael's suit was properly brought under the Declaratory Judgment Act, the limitation of rule 1.540 is inapplicable.
The judgment dismissing Michael's complaint is reversed and the cause remanded for further proceedings, which may include the setting and assessment of child support for Michael by Cosmides.
REVERSED and REMANDED.
DAUKSCH and COBB, JJ., concur.
NOTES
[1] The record indicates Cosmides had caused criminal charges to be lodged against Serena, and that those charges were dropped after Michael's adoption.
[2] Although this court has upheld a custodial parental agreement to release the noncustodial parent from the obligation to pay court-ordered child support in exchange for an agreement to give up the right of visitation, such an agreement is voidable. A parent may not contract away a child's right of support. McClish v. Lee, 633 So.2d 56 (Fla. 5th DCA), rev. denied, 640 So.2d 1107 (Fla. 1994). The children in McClish were already emancipated at the time the action was brought, and the case involved a claim for reimbursement by the mother after she had released the father from such support during the children's minority.
[3] We are aware that section 63.182, Florida Statutes (1993) provides that:

[a]fter 1 year from the entry of a judgment of adoption, any irregularity or procedural defect in the proceedings is cured, and the validity of the judgment shall not be subject to direct or collateral attack because of any irregularity or procedural defect. Any defect or irregularity of, or objection to, a consent that could have been cured had it been made during the proceedings shall not be questioned after the time for taking an appeal has expired. (emphasis supplied)
However, this statute does not bar an action to set aside an adoption procured by fraud. See M.L.B. v. Department of Health and Rehabilitative Services, 559 So.2d 87 (Fla. 3d DCA), rev. denied, 574 So.2d 140 (Fla. 1990).
[4] Injury has been shown in the following circumstances: (a) actual or prospective criminal prosecution; Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (convicted and fined $5.00 for failure to send child to school); (b) actual or prospective economic injury, Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915) (loss of employment); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); (c) individual tax obligation, Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984); (d) individual environmental injury, Sierra Club v. Morton; (e) Bible reading in public schools, School District of Abington v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); and (f) future injuries, Blum v. Yaretsky, 457 U.S. 991, 1000, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982) (nursing home residents have standing to sue over threatened transfers to other facilities). There is a fundamental right to live in an extended, as opposed to a nuclear family. Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Similarly, an individual's right of decision about procreation is constitutionally protected. Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). The United States Supreme Court has also indicated that in family type situations, a minor's constitutional rights warrant no less respect than those of adults. See generally, Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 67, 96 S.Ct. 2831, 2840, 49 L.Ed.2d 788 (1976); Bellotti v. Baird, 443 U.S. 622, 633, 99 S.Ct. 3035, 3042, 61 L.Ed.2d 797 (1979).
[5] Further, the agreement entered into by the parents, i.e., for the father to give up his parental rights to the child in exchange for the sum of $500 per month (which amounts to $108,000 during the period of Michael's minority), smacks of a violation of section 63.212(1)(i) and may be void under Florida law. Specifically, that section provides that:

(1) It is unlawful for any person:
(i) To contract for the purchase, sale, or transfer of custody or parental rights in connection with any child ... in return for any valuable consideration. Any such contract is void and unenforceable as against public policy of this state. (emphasis supplied).
[6] We think this case is more similar to Kingsley v. Kingsley, 623 So.2d 780 (Fla. 5th DCA 1993), because in both cases the parents' interests were adverse to those of the child. There we held that the law requires a guardian ad litem to be appointed to represent a minor child.