761 So.2d 454 (2000)
Dinesh PANDYA, as Trustee, and Palm Beach County, a political subdivision of the State of Florida, Appellants,
v.
Joel ISRAEL, Appellee.
Nos. 4D99-2183, 4D99-2253.
District Court of Appeal of Florida, Fourth District.
June 7, 2000.
Elaine Johnson James of Nason, Yeager, Gerson, White & Lioce, P.A., West Palm Beach, for Appellant-Dinesh Pandya, as Trustee.
Sharon Burrows, Assistant County Attorney, Palm Beach County Attorney's Office, for Appellant-Palm Beach County, a political subdivision of the State of Florida.
*455 Glen Rafkin, and Cynthia J. Hoover of Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A., Fort Lauderdale, for appellee.
GROSS, J.
The issue in this case is whether an Agreement of Sale and Purchase (the "Agreement") between appellants Dinesh Pandya and Palm Beach County contravened section 125.35(1)(a), Florida Statutes (1997), which provides that a county is authorized to "sell and convey any real or personal property ... belonging to the county." We affirm the trial court's final judgment setting aside the Agreement for violating the statute.
Commander Ocean Resort I Condominium ("the Resort") is a timeshare condominium development. Unlike a traditional condominium, a timeshare unit is subdivided into fifty-two unit weeks, entitling an owner to use the unit for one week during a calendar year. Property taxes are assessed on each unit week. Because the total value of the unit weeks exceeds the value of a unit which has not been subdivided, the total taxes on a timeshare unit are higher than a unit that has not been subdivided.
Although the developer of the Resort collected property taxes on unit weeks from owners, it failed to remit the taxes to the tax collector. On twenty-seven timeshare units, the tax collector advertised the sale of tax certificates. No one bid on the tax certificates, probably because the taxes due greatly exceeded the value of the timeshare units. Because there were no bidders, twenty-seven tax certificates were issued to Palm Beach County. See § 197.432(1), Fla. Stat. (1997). Pursuant to Chapter 197, the units were scheduled to escheat to the County on December 7, 2001 if none of the following occurred: (1) the holder of a tax certificate for a unit applied for a tax deed and title to such unit was transferred; (2) a unit was redeemed; or (3) the unit was sold from the Land Available for Taxes list.
After the Resort's developer experienced financial difficulty, the Bank of New York foreclosed its mortgage and obtained title to the Resort's hotel, office building and restaurant, eight full units in the timeshare condominium and various unit weeks in other units. In 1995, appellant Dinesh Pandya, as trustee, acquired the Bank of New York's interest in the real property.
Appellee Joel Israel owned all the unit weeks in five timeshare units and tax certificates on twenty-seven units.
Due to the developer's financial problems, the Resort had fallen into disrepair. After taking over the developer's interest, Pandya undertook to improve the maintenance and appearance of the Resort. All the parties to this case had an interest in achieving the revitalization of the Resort.
Beginning in 1995, Pandya negotiated with the County to "secure the right to acquire" the units for which the County held tax certificates. The appraised value of the County's interest in the property was $170,000; taxes owed on the units totaled $3,200,000.
In 1997, pursuant to section 125.35(1)(b), Florida Statutes (1997), the County published an invitation to bid for the purpose of acquiring the County's interest in the tax certificates pertaining to the twenty-seven units. Pandya tendered the only bid. The Board of County Commissioners approved the bid and authorized the County to execute an Agreement of Sale and Purchase.
Under the October 21, 1997 Agreement, the County acknowledged that it held tax certificates for unpaid taxes in connection with twenty-seven units located within the project. The Agreement stated that "upon taking title to [the units], [the County] desires to sell and [Pandya, as trustee] desires to purchase [the units] in the manner set forth herein." The Agreement described the mechanics of the sale:

1. Sale and Purchase

a. Not later than 30 business days after the Escheat Dates [December 7, *456 2001], the Seller shall cause the Clerk of the Circuit Court of Palm Beach County to execute a tax deed vesting title in the Seller's Board of County Commissioners.
b. Provided Buyer is in compliance with the terms and provisions of this Agreement, not later than 30 business days after a tax deed for a Unit is recorded, Seller shall convey the Unit to Buyer or to an entity designated by Buyer. Not withstanding the foregoing, Seller shall not be obligated to convey the Units to Buyer until Buyer has paid the Purchase Price in full.
c. Each transfer of a Unit shall be evidenced by a county deed ... from Seller in the form prescribed by Section 125.411 of the Florida Statutes.
The purchase price established by the contract was $192,726, payable in six installments. In the event that the County was unable to deliver a deed to a unit, the purchase price was to be reduced by $7,138 per unit. The County agreed not to "accept or negotiate any tax deed application for less than actual amount due in connection with the Tax Certificate."
Israel filed a declaratory judgment action against the County and Pandya seeking to invalidate the Agreement. Israel argued that the Agreement contravened section 125.35(1), Florida Statutes (1997). The trial court denied Pandya's motion to dismiss, ruling that the declaratory judgment action was proper and that Israel had standing to bring it. All parties cross moved for summary judgment. The trial court denied appellants' motion and granted Israel's, holding that the Agreement was "void or otherwise invalid and unenforceable." The final judgment ruled that the County was precluded from entering into an agreement to sell the property prior to its escheating and that the county must "follow the procedure of Fla. Stat. § 125.35(1) in the event competitive bids are solicited for the Real Property if title is obtained."
We reject appellants' contention that the circuit court was without jurisdiction due to the absence of both a bona fide dispute and an actual, present need for the declaration. "The purpose of a declaratory judgment is to afford parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations." Santa Rosa County v. Administration Comm'n, Div. of Admin. Hearings, 661 So.2d 1190, 1192 (Fla.1995) (citation omitted). Israel sought the declaratory judgment concerning the enforceability of the existing Agreement between Pandya and the County, so that the declaration concerned a present, ascertainable state of facts. A declaratory judgment "may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened." § 86.051, Fla. Stat. (1997). The transaction involved potential ownership of units at the Resort where Israel was the other main property holder. Presumably the majority owner of the units described in the Agreement would control the future development of the property. For this reason, a power, privilege, or right of Israel was dependent on the ruling in the declaratory judgment suit; based on his interest in bidding for ownership in 2001 once the property escheated to the County, his position in the controversy was antagonistic to Pandya's. See Santa Rosa, 661 So.2d at 1192-93 (quoting Martinez v. Scanlan, 582 So.2d 1167, 1170 (Fla.1991) (quoting May v. Holley, 59 So.2d 636, 639 (Fla.1952))).
We also reject appellants' contention that Israel lacks standing to seek declaratory relief. We agree with Judge Kroll's analysis of this issue:
A party has standing when he has a sufficient stake in a justiciable controversy. To establish standing a party must have an injury in fact for which relief is likely to redress and, in non-constitutional cases, the interest must *457 fall within a statutory or constitutional guarantee (i.e. the zone of interest). Peregood v. Cosmides, 663 So.2d 665 (Fla. 5th DCA 1995).
Defendant contends Plaintiff cannot establish an injury in fact differing in kind from that of the general public because Plaintiff did not participate in the bidding process. Plaintiff asserts that his injury differs from injuries suffered by the community as a whole, in that he is ready, willing and able to purchase the units for an amount in excess of the bid when the units escheat to the County in 2001. Plaintiff alleges he was precluded from bidding on the units because the County failed to wait until the land escheated to the County before soliciting bids. Plaintiff is challenging the County's authority to solicit bids under § 125.35 prior to owning the property. Compare: City of Lynn Haven v. Bay County Council of Registered Architects, Inc., 528 So.2d 1244 (Fla. 1st DCA 1988).
Plaintiff sufficiently alleges an injury in fact differing in kind from that of the general public and an interest within the zone of interest for which the statute is intended to protect. Therefore, Plaintiff has standing to bring this suit.
In City of Lynn Haven, a non-profit corporation whose members were registered architects alleged a special injury which was not shared by taxpayers in general. The special injury was that the City's bidding procedure deprived the architects of the opportunity to submit their qualifications and negotiate for the right to provide professional services for a construction project. The first district held that the architects' corporation had standing to challenge the process by which the City secured architectural services for the construction project. The bidding process used by the City circumvented section 287.055, Florida Statutes (1987), the Consultant's Competitive Negotiation Act, by allowing the contractor with the low bid to select and hire an architect; the City's interpretation of the statute denied the corporation's members potential professional and economic benefits which would have resulted from selection as the project architect. See 528 So.2d at 1246.
Like the architects in City of Lynn Haven, Israel confronted a contract which excluded him from potential economic benefits. His claim of special injury was buttressed by his ownership of other units at the property which is the subject of the contract.
Finally, we agree with Judge Kroll's conclusion that the contract at issue violates section 125.35(1)(a), Florida Statutes (1997).
Section 125.35(1)(a) provides in pertinent part:
The board of county commissioners is expressly authorized to sell and convey any real or personal property, and to lease real property, belonging to the county, whenever the board determines that it is to the best interest of the county to do so, to the highest and best bidder for the particular use the board deems to be the highest and best....
(Emphasis supplied).
Subsection (1)(b) is the notice provision and provides:
No sale of any real property shall be made unless notice thereof is published once a week for at least 2 weeks in some newspaper of general circulation published in the county, calling for bids for the purchase of the real estate so advertised to be sold....
Section 125.01(1), Florida Statutes (1997), empowers the County to "carry on county government" to "the extent not inconsistent with general or special law." This power includes the power to "[p]erform any other acts not inconsistent with law, which acts are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law." § 125.01(1)(w), Fla. Stat. (1997). Such enumeration of powers *458 shall not be deemed exclusive or restrictive, but shall be deemed to incorporate all implied powers necessary or incident to carrying out such powers enumerated, including, specifically, authority to employ personnel, expend funds, enter into contractual obligations, and purchase or lease and sell or exchange real or personal property.
§ 125.01(3)(a), Fla. Stat. (1997) (emphasis supplied).
As Israel points out, section 125.35 specifically addresses the procedural requirements for the sale of property by the County and thus controls over the more general terms of section 125.01. See McKendry v. State, 641 So.2d 45, 46 (Fla. 1994); Barnett Banks, Inc. v. Department of Revenue, 738 So.2d 502, 505 (Fla. 1st DCA 1999). Thus, any property sold by the county must "belong to" the county. See § 125.35(1)(a), Fla. Stat. (1997).
We agree with Judge Kroll that section 125.35 contemplates that the County will sell real property in the traditional way when it owns the property. Where a term is not defined by statute, a fundamental tenet of statutory construction requires that a statutory term be given "`its plain and ordinary meaning.'" Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla.2000) (quoting Green v. State, 604 So.2d 471, 473 (Fla. 1992)). Under its plain and ordinary meaning, the term "belonging" denotes ownership. See BLACK'S LAW DICTIONARY 148 (7th ed. 1999).
Pandya creatively argues that what the County sold was not real property but its interest in the "liens created by the tax certificates that encumbered the units," an interest that was "transferable personal property" that "belonged to" the County. This legal spin tortures the statutory limitation beyond recognition.
A competitive bidding statute like section 125.35 is enacted for the protection of the public. See Outdoor Media of Pensacola, Inc. v. Santa Rosa County, 554 So.2d 613, 615 (Fla. 1st DCA 1989). As the first district has written, competitive bidding statutes
create a system by which goods or services required by public authorities may be acquired at the lowest possible cost. The system confers upon both the contractor and the public authority reciprocal benefits, and exacts from each of them reciprocal obligations. The bidder is assured fair consideration of his offer, and is guaranteed the contract if his is the lowest and best bid received. The principal benefit flowing to the public authority is the opportunity of purchasing the goods and services required by it at the best price obtainable. Under this system, the public authority may not arbitrarily or capriciously discriminate between bidders, or make the award on the basis of personal preference.
Id. (quoting Hotel China & Glassware Co. v. Board of Pub. Instruction of Alachua County, 130 So.2d 78, 81 (Fla. 1st DCA 1961)).
This legislative intent is not furthered by reading the statute to allow bidding for personal property interests in real estate that will be transferred in the future in a complex deal that has been the subject of negotiations between the County and a potential bidder before the opening of the bidding process. The Agreement contemplates a sale of real property in the future; it states: "WHEREAS, upon taking title to a Unit, Seller desires to sell and Buyer desires to purchase such Unit in the manner set forth herein." The great disparity between the amount of taxes owed on the property and its value made it highly unlikely that intervening buyers would disrupt the mechanics of the sale.
Our reading of section 125.35 is that the County may "sell and convey" only real property that it owns. Any flexibility in this area must come from the legislature. We therefore affirm the trial court's final judgment invalidating the Agreement. Pandya's affirmative defense *459 of estoppel cannot breathe life into a contract that violates a statutory provision. See Sigmund v. Elder, 631 So.2d 329, 331 (Fla. 1st DCA 1994) (quoting Moore v. Moore, 237 So.2d 217, 220 (Fla. 4th DCA 1970)).
AFFIRMED.
GUNTHER and SHAHOOD, JJ., concur.